## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

**JAYLIMAR NATAL-LUGO,** *individually,*
*and as Special Personal Representative of the*
**ESTATE OF LARRY RUIZ BARRETO,** *and*
*as Conservator of and on behalf of her and the*
*decedents minor child,* **Plaintiff** <u>L. A. R-L;</u>
**DEMIX RUIZ,** *individually,*
*and as co-Special Personal Representative of the*
**ESTATE OF LARRY RUIZ BARRETO;**
**LESLIE LUGO,**
**JONATHAN RUIZ-HERNANDEZ,**
**MIGUEL SANCHEZ,**
**AND JOSE RUIZ-HERNANDEZ,**
                    Plaintiffs

**VS**.                                          **Civil Action No. 1:20-CV-_____**

**CITY OF FALL RIVER;**
**IAN SCHACHNE,** *in his capacity*
*as Treasurer of the* **CITY OF FALL RIVER;**
**JASIEL CORREIA,** *in his individual capacity,*
**and official capacity as Mayor of Fall River 2015-2019;**
**FALL RIVER POLICE DEPARTMENT;**
**and Police Officers NICHOLAS HOAR, DANIEL RACINE,**
**ALBERT DUPERE, ALLAN CORREIRO, MICHAEL PESSOA,**
**DEREK OAGLES, MICHAEL SILVIA, ROSS AUBIN, TYLER PAQUETTE,**
**SEAN AGUIAR, BRENDEN MCNEMEY, PETER DALUZ,**
**JENNIFER DELEON, THOMAS ROBERTS, JOHNATHAN DESCHENES,**
**DAVID MCELROY, SERGEANT GREGORY BELL, and**
**JOHN DOES 1-25,** *in their individual capacities*
*and official capacities,*
                    Defendants

## <u>COMPLAINT</u>

The plaintiffs move the Court for entry of judgment in their favor against the City of Fall

River and the other Defendants, and in support of such Complaint aver as follows:

## INTRODUCTION

1.  This is a Federal Civil Rights action brought as a result of what the Plaintiffs believe was
a blatant violation of, inter alia, the federal civil, constitutional and human rights of 19 year old
Larry Ruiz-Barreto on November 12, 2017, who sustained fatal injuries after he was shot
multiple times at point blank range by Fall River Police Officer Nicholas Hoar as he sat in his

motor vehicle minding his own business; and a blatant violation of the rights of Demix Ruiz-Hernandez, Leslie Lugo, Jonathan Ruiz-Hernandez, Miguel Sanchez, and Jose Ruiz-Hernandez, who were unlawfully arrested, detained and maliciously prosecuted, all without probable cause or other justification, after being violently assaulted and battered on videotape at the Charlton Memorial Hospital by a small army of defendant police officers as the decedent's family was peacefully mourning the loss of Larry Ruiz-Barreto two hours after he was shot by police on November 12, 2017.

2.   It is alleged that each of the Plaintiff's rights under certain federal statutes, to include 42 U.S.C. Sections 1983, 1985 and 1986, together with the 4th, 8th and 14th Amendment rights under the Constitution of the United States of America and rights guaranteed by the Commonwealth of Massachusetts were violated.

## JURISDICTION

3.   Federal jurisdiction in this case is predicated on Title 28 U.S.C. §§ 1331 and 1343, et seq., in that this is a case brought under the authority of the Civil Rights Act of 1871, Title 42 U.S.C. § 1983, 1985, and 1986, and the Fourth and Fourteenth Amendments to the United States Constitution.

4.   Jurisdiction over state-law claims is asserted as supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

5.   The Plaintiffs herein invoke the federal question jurisdiction of the Honorable Court pursuant to 28 U.S.C. Sections 1331 & 1343 to obtain a judgment for the costs of suit, including reasonable attorney's fees, and damages suffered and sustained by the Plaintiffs and caused by the Defendants' blatant violation of the rights, privileges and immunities as guaranteed Plaintiffs by the Fourth, Eighth, and Fourteenth Amendments to the Constitution of the United States of America and by the applicable Federal statutes, more particularly, 42 U.S.C. Sections 1983, 1985, 1986 & 1988.

## VENUE

6.   Venue is proper in this jurisdiction and district pursuant to 28 U.S.C. Section 1391(b) because a substantial part of the real and immediate harm sustained by the Plaintiffs occurred in this judicial district and division.

## PARTIES

7.    Plaintiff, ESTATE OF LARRY RUIZ-BARRETO, has been created by and approved by the Probate Court Justice for the Bristol Probate and Family Court of the City of Taunton, in Bristol County, Massachusetts, and JAYLIMAR NATAL LUGO and DIMEX RUIZ, the duly appointed Special Personal co-Representatives appointed by said Probate Court.  See Estate of Larry Ruiz Barreto, Docket No. BR20P2104 (October 28, 2020).

8.   Plaintiff JAYLIMAR NATAL LUGO, at all times relevant hereto, was and is a resident of the City of New Bedford, Massachusetts, brings this action individually, as the Conservator and Parent of minor Plaintiff L.A. R-L, the surviving daughter of the decedent, Larry Ruiz Barreto, and as the duly appointed Special Personal Representative of the ESTATE OF LARRY RUIZ BARRETO, and for her heirs at law and other statutory beneficiaries and his estate pursuant to the Massachusetts Gen Laws.

9.   Plaintiff herein, DEMIX RUIZ a/k/a Demix Ruiz Hernandez, at all times relevant hereto, was and is a resident of the City of New Bedford, Massachusetts, brings this action individually, and as the duly appointed Special Personal Representative of the ESTATE OF LARRY RUIZ BARRETO, and for her heirs at law and other statutory beneficiaries and his estate pursuant to the Massachusetts Gen Laws.

10. Plaintiff herein, JOSE RUIZ-HERNANDEZ, is, and at all times herein mentioned was a resident of New Bedford, Massachusetts, in Bristol County.  Plaintiff is a citizen and resident of the United States of America and the Commonwealth of Massachusetts and is entitled to the protections of the Constitution of the United States and the Massachusetts Declaration of Rights.

11. Plaintiff herein, JONATHAN RUIZ-HERNANDEZ, is, and at all times herein mentioned was a resident of New Bedford, Massachusetts, in Bristol County.  Plaintiff is a citizen and resident of the United States of America and the Commonwealth of Massachusetts and is entitled to the protections of the Constitution of the United States and the Massachusetts Declaration of Rights.

12. Plaintiff herein, MIGUEL SANCHEZ, is, and at all times herein mentioned was a resident of New Bedford, Massachusetts, in Bristol County.  Plaintiff is a citizen and resident of the United States of America and the Commonwealth of Massachusetts and is entitled to the protections of the Constitution of the United States and the Massachusetts Declaration of Rights.

13. Plaintiff herein, LESLIE LUGO, is, and at all times herein mentioned was a resident of New Bedford, Massachusetts, in Bristol County.  Plaintiff is a citizen and resident of the United States of America and the Commonwealth of Massachusetts and is entitled to the protections of the Constitution of the United States and the Massachusetts Declaration of Rights.

14. Defendant CITY OF FALL RIVER is a governmental entity and municipal corporation, duly organized and existing under the laws of the Commonwealth of Massachusetts.  The City of Fall River operates the Fall River Police Department.  It is sued through Defendant IAN SCHACHNE, its Treasurer.  At all times relevant hereto, Defendant City, acting through the Fall River Police Department, was responsible for the policy, practice, supervision, implementation, and conduct of all Fall River PD matters and was responsible for the appointment, training, supervision, discipline and retention and conduct of all Fall River PD personnel. In addition, at all times here relevant, Defendant City was responsible for enforcing the rules of the Fall River PD, and for ensuring that the Fall River PD personnel obey the laws of the United States and the Commonwealth of Massachusetts.

15. Defendant JASIEL CORREIA was the Mayor of the City of Fall River from 2015 to 2019.  As such, he was responsible for the City's administration and policy-making during this time, including the policies and procedures described herein and for their enforcement.

16. Defendant FALL RIVER POLICE DEPARTMENT is a duly incorporated municipality with a usual place of business located at 685 Pleasant Street, Fall River, Bristol County, Massachusetts.

17.  At all times herein mentioned DEFENDANT DANIEL RACINE was the Fall River Chief of Police until December 1, 2017, and ALBERT DUPERE was the CHIEF OF POLICE for the Fall River Police Department from December 1, 2017 until March 2020.  Defendants DANIEL RACINE and CHIEF DUPERE are sued herein in their individual capacity and in their official capacities as CHIEF of POLICE.

18. At all times mentioned herein, defendant NICHOLAS HOAR was an employee of the Fall River Police Department.  He is being sued in his individual capacity and in his official capacity as a POLICE OFFICER.

19. At all times mentioned herein, defendant's ALLAN CORREIRO, MICHAEL PESSOA, DEREK OAGLES, MICHAEL SILVIA, ROSS AUBIN, AND TYLER PAQUETTE, SEAN AGUIAR, OFFICER BRENDEN MCNEMEY, PETER DALUZ, JENNIFER DELEON, THOMAS ROBERTS, JOHNATHAN DESCHENES, AND DAVID MCELROY, AND SERGEANT GREGORY BELL were employees of the Fall River Police Department.  They are being sued in their individual capacity and official capacity as Fall River Police Officers.

20. Plaintiffs are ignorant of the true names and capacities of Defendants Does 1 through 20, inclusive, and therefore sue these defendants by such fictitious names.  Plaintiffs are informed and believe and thereon allege that each defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiffs as set forth herein, including but not limited to the detention, wrongful death of decedent, the coverup, and assault and false arrest and prosecution of Plaintiffs DEMIX RUIZ-HERNANDEZ, LESLIE LUGO, JONATHAN RUIZ-HERNANDEZ, MIGUEL SANCHEZ, AND JOSE RUIZ-HERNANDEZ.  Plaintiffs will amend their complaint to state the names of Does 1-20, inclusive, when they have been ascertained. They are each sued in their individual capacity and official capacity.  Defendants Does 1 through 20, include managerial, supervisorial, and policymaking employees of the Fall River PD, who were acting in their individual capacities and under color of law within the course and scope of their duties as individual police officers, and managerial, supervisorial, and policymaking employees for the Fall River PD.  DOES 1-20 include those acting with the complete authority and ratification of their principal, Defendant CITY.

21. At all relevant times, these Defendants, and each of them, were acting under color of law, that is, under the color of the statutes, ordinances, regulations, policies, customs and usages of Defendant City of Fall River.

22. Plaintiffs are ignorant of the true names and capacities of Defendants Does 21 through 25, inclusive, and therefore sue these defendants by such fictitious names.  Plaintiffs are

4

informed and believe and thereon allege that each defendant so named is responsible in some manner for the injuries and damages sustained by Plaintiffs as set forth herein, including the detention, wrongful death of decedent, the coverup, and assault and false arrest and prosecution of Plaintiffs DEMIX RUIZ-HERNANDEZ, LESLIE LUGO, JONATHAN RUIZ-HERNANDEZ, MIGUEL SANCHEZ, AND JOSE RUIZ-HERNANDEZ.  Plaintiffs will amend their complaint to state the names of Does 21-25, inclusive, when they have been ascertained. They are each sued in their individual capacity and official capacity.  Defendants Does 21 through 25, include individual police officers, and managerial, supervisorial, and policymaking employees of the police departments and agencies involved in the acts alleged herein.

23. At all relevant times, these Defendants, and each of them, were acting under color of law, that is, under the color of the statutes, ordinances, regulations, policies, customs and usages of Defendant City of Fall River.

24. Plaintiffs are required to comply with an administrative tort claim procedure by filing a Notice of Presentement for such claims.  Plaintiffs have complied with all such requirements.

**STATEMENT OF FACTS**
DRAG RACING IN FALL RIVER INDUSTRIAL PARK WAS
WELL KNOWN TO FALL RIVER POLICE OFFICER NICHOLAS HOAR –
AND EVENTS LEADING UP TO HIM SHOOTING
19 YEAR OLD LARRY RUIZ-BARRETO

25. There is a long history of drag racing in the Fall River Industrial Park area on the weekends – going back at least 3 decades.

26. A Facebook group called "Low Budget Racing" organized a drag race which was to occur on November 12, 2017, at the intersection of Riggenbach and Airport Roads in the Fall River Industrial Park.

27. This race involved an individual from Brockton, who was interested in racing an individual from Rhode Island.

28. The decedent, a law-abiding citizen, Larry Ruiz-Barreto (19 years old with no criminal record), and his father, Dimex Ruiz-Hernandez (no criminal record), traveled to watch the race. A friend, Eusebio Famania, joined them.  They arrived in a blue 1997 Acura.

29. Fall River Police Officer Nicholas Hoar was very familiar with the long history of drag racing that occurred at this location, and had engaged 30-40 participants the prior evening, on November 11, 2017, and advised them not to drag race there anymore.

30. On November 12, 2017, shortly before midnight, two cars, a GTO and Honda, prepared to race.  Spectators lined up near the starting line.

31. At this time, a car with two with two female occupants drove southbound on Riggenbach Road.  At the intersection with Airport Road, their car had to go around the GTO and Honda, while both of these cars were warming up their tires. They did this by pouring a flammable substance on the roadway, lighting the substance on fire and then driving their cars over the flames while spinning their tires.

32. The young women observed this, not knowing this is how race car tires are prepared for drag racing.  After passing through the intersection, the young women heard two bangs which they believed were possibly gunshots, and called 911.

33. Fall River Police Officer's Nicholas Hoar and Allan Correiro, both familiar with this being consistent with racing activities at this location, were dispatched to the scene and traveled in separate Police Ford Explorer's.

<u>OFFICER HOAR'S UNLAWFUL SHOOTING OF LARRY RUIZ-BARRETO</u>

34. Officer Hoar arrived first and most of the spectators and vehicles immediately fled the scene, but Officer Hoar noticed the blue 1997 Acura was parked on the side of the road and another vehicle was parked right behind it.  Rather than chase one of the fleeing vehicles, which he could have lawfully done under *Illinios v. Wardlow*, 528 U.S. 119 (2000), Officer Hoar decided he would execute an investigative stop on the 1997 Acura -- but he claimed he did not notice any occupants until he exited his police vehicle.  Officer Hoar claims once he exited his police vehicle, he noticed the Acura had its lights on and its motor running.

35. Police have rules, regulations, and protocols which must be complied with, because they are designed to ensure the protection of the public and the police officers, and they are also designed to ensure that the constitutional rights of citizens are not violated by police officers.

36. Police protocols for a lawful investigatory stop require that it be based upon a reasonable belief or suspicion on the part of the officer that some activity out of the ordinary is taking place, that such activity is crime-related, *<u>and</u>* that the person under suspicion is connected with or involved in that criminal activity; and police actions cannot exceed the scope of a lawful traffic stop and / or seizure.

37. At the time the Officer Hoar stopped the Ruiz-Barreto vehicle, he lacked reasonable suspicion that the Larry Ruiz-Barreto was committing a crime, and Larry Ruiz-Barreto was not committing a traffic violation. Thus, the stop and any continued detention violated the Fourth Amendment to the United States Constitution, and Article 14 of the Massachusetts Declaration of Rights.

38. On November 12, 2017, Officer Hoar violated police protocol as he did not possess reasonable suspicion that Larry Ruiz-Barreto was involved in criminal activity, yet Officer Hoar executed an unlawful investigatory stop of the parked 1997 Acura he was seated in.

39. Officer Hoar again violated police protocol by parking his police vehicle *in front* of the 1997 Acura. When a target vehicle is subjected to an investigatory stop by a police officer, police protocol requires that the police officer position his/her patrol vehicle approximately two-car lengths behind the target vehicle, and slightly offset to the left.

40. Due to the fact that the occupants of the of stopped 1997 Acura were unknown to Officer Hoar, police protocol also required that Officer Hoar freeze the situation until enough cover units arrived to deal with the situation, and the first cover vehicle should position his/her patrol vehicle to the right of the first officer's vehicle, leaving enough room between the vehicles to allow the cover officer to open his/her patrol vehicle door.

41. Officer Hoar again violated police protocol as he did not wait for any cover vehicles to arrive, and he got out of his police vehicle with his gun in hand, walked up to the driver's side front fender/windshield area, banged his gun barrel against the driver's side windshield, put his left hand on the windshield to balance himself to get a direct shot at Larry Ruiz-Borreta in the driver's seat, and began shooting with his weapon up next to the windshield. These actions clearly exceeded the scope of a lawful traffic stop and / or seizure.

42. To his horror, Dimex Ruiz-Hernandez, father of Larry Ruiz-Barreto, was seated in the rear passenger seat of the 1997 Acura, and he watched Officer Hoar walk over to the driver's side of the vehicle, yell something in English nobody understood, then watched Officer Hoar bang his service weapon on the windshield while Larry Ruiz-Barreto raised his hands in a surrender posture, and then watched Officer Hoar lean over the driver's side of the Acura and open fire on his son and shoot him 6 times, killing him. Officer Hoar stepped backwards after he fired the first 2 rounds of 6. The 1997 Acura never moved.

43. The forensic and eyewitness evidence, and ballistics and ejection patterns demonstrate that Officer Hoar was *standing on the driver's side* of the Acura and started firing into the windshield and that he began to backpedal after firing his weapon the first 2 of 6 times; and State Police forensics show that Officer Hoar put his left hand on the hood of the Acura, at an angle impossible to occur from the hood, for balance to get another direct shot into driver Larry Ruiz-Barreto, while leaning over the Acura from the driver's side.

## OFFICER NICHOLAS HOAR AND OFFICER CORREIRO'S COVERUP STORY

44. On information and belief, defendants Officer Nicholas Hoar and Officer Allan Correiro and unknown John Does violated police protocol by fabricating a coverup story, after realizing that Officer Hoar had violated police protocols and killed an innocent person.

45. Officer Hoar admitted seeing the decedents hands just prior to firing at him, but Officer Hoar failed to admit that the decedent never moved the 1997 Acura, and failed to admit that Larry Ruiz-Barreto yielded to the show of authority; i.e., the weapon pointed at him point blank from 2 feet away by Officer Hoar.

46. Officer Hoar had a duty per protocol to avoid using deadly force when an alternative existed, and even assuming arguendo he was in front of the Acura – the police photo of the scene illustrates that Officer Hoar could have simply taken a couple steps to his left and stood by the driver's side of his police vehicle rather then open fire on Larry Ruiz-Barreto.

47. During the police radio transmissions aired on television, Officer Hoar made no mention of being assaulted by or struck by a vehicle or being injured by a vehicle.

48. A few hours after the shooting, on November 13, 2017, at 6:35pm, the Associated Press released a newswire stating that the Bristol County District Attorney's Office reported that Fall River police shot "at a car to keep it from leaving."  (***Exhibit A)*(**"Fall River Police Shoot Vehicle to Stop It, Killing Driver"**

49. The District Attorney's office does not make a mistake like this.  However, on information and belief, the DA's Office admission reveals that upper level City and State officials directly participated in changing the version from police shooting the vehicle to stop it (unlawful), to a version not mentioned anywhere by a single eyewitness – that Larry Ruiz-Barreto put officer Hoar's life in danger by striking officer Hoar with his Acura and knocking him up onto the hood of his car.

50. On information and belief, Officer's Hoar and Correiro later fabricated a story stating that the decedent knocked Officer Hoar up onto the hood of the 1997 Acura, putting Officer Hoar in fear of being run over, in order to justify the shooting and avoid civil and criminal prosecution – however, applying the laws of physics to the facts at hand, it is impossible that Officer Hoar was knocked up onto the hood, and it is impossible that the bullets fired from Officer Hoar's weapon were fired while Officer Hoar was on the hood of the Acura.

51. It is a violation of police protocol for a police officer to ever get in front of a motor vehicle with its engine running, and it is a violation of Fall River police protocol to shoot at a moving vehicle unless the moving vehicle places the police officer's life in danger.

52. Despite several eyewitnesses to this event, not one of them saw Officer Hoar in front of the Acura or on its hood and none saw the Acura move – they observed Officer Hoar standing off to the driver's side of the 1997 Acura while shooting, where his life was not in danger, and which is a violation of police protocol.

53. The forensic evidence shows that Officer Hoar fired from the side of the Acura, as the shell casings were ejected in locations only consistent with rounds fired from the side of the Acura, the angles of the 6 bullets that went through the windshield and struck the decedent also demonstrate that Officer Hoar fired the fatal rounds from the side of the Acura; and the evidence shows that if Officer Hoar had fired from the hood of the Acura as he alleged that all 6 rounds he fired would have missed the decedent.

54. If Larry Ruiz-Barreto had knocked Officer Hoar up onto the hood as alleged, the occupants of the 1997 Acura would not have been allowed to leave the scene to go to the hospital to ascertain the condition of Larry Ruiz-Barreto (who was not pronounced deceased until after he was removed from the scene by Rescue personnel), as they would have been held as material witnesses to the alleged deadly assault upon Officer Hoar.

THE SHOOTING INCIDENT BY OFFICER'S HOAR LED TO THE UNPROVOKED POLICE ASSAULT ON THE DECEDENT'S FAMILY 2 HOURS LATER AS THEY PEACEFULLY MOURNED AT THE HOSPITAL

55. On information and belief, police officer's in the area are well aware of the family of Officer Hoar, and his family's extensive police history, and descended upon the family members of Larry Ruiz-Barreto to effect retribution upon them due to Officer Hoar discharging his firearm.

56. At approximately 2:00pm, while family members DEMIX RUIZ-HERNANDEZ, LESLIE LUGO, JONATHAN RUIZ-HERNANDEZ, MIGUEL SANCHEZ, AND JOSE RUIZ-HERNANDEZ mourned the death of Larry Ruiz-Barreto at Charlton Memorial Hospital, an army of known and as yet unidentified JOHN DOE police officers, from 5 jurisdictions (Fall River, State Police, Freetown, Somerset, and Swansea), including Fall River Police officers MICHAEL PESSOA, DEREK OAGLES, MICHAEL SILVIA, ROSS AUBIN, AND TYLER PAQUETTE, SEAN AGUIAR, OFFICER BRENDEN MCNEMEY, PETER DALUZ, JENNIFER DELEON, THOMAS ROBERTS, JOHNATHAN DESCHENES, AND DAVID MCELROY, and SERGEANT GREGORY BELL surrounded the peacefully mourning family members and then brutally assaulted and battered the family members -- fracturing the skull of one family member; arrested them; and charged them with multiple false crimes.

57. A surveillance video of the incident shows that an army of Police officers (identities of some are listed in Paragraph 56) violently assaulted DEMIX RUIZ-HERNANDEZ, LESLIE LUGO, JONATHAN RUIZ-HERNANDEZ, MIGUEL SANCHEZ, AND JOSE RUIZ-HERNANDEZ, as they peacefully mourned the loss of their loved one.

58. DEMIX RUIZ-HERNANDEZ, LESLIE LUGO, JONATHAN RUIZ-HERNANDEZ, MIGUEL SANCHEZ, AND JOSE RUIZ-HERNANDEZ were all held by Fall River police and arraigned in Fall River District Court and charged with multiple criminal offenses.

59. They were charged with these offenses based on the falsified police reports written by Fall River Police Officer's MICHAEL PESSOA and ROSS AUBIN – who were obviously unaware that surveillance video recorded the events at Charlton Memorial Hospital.  In addition, these officers wrote sworn reports indicating that DEMIX RUIZ-HERNANDEZ and JOSE RUIZ-HERNANDEZ made multiple threatening statements toward the Fall River police officers

-- but these two Plaintiffs couldn't speak English at all.[1]  In addition, Fall River PD employs 281 full time employees (94% White), but only three are Spanish – and no hospital employee where the incident occurred could speak Spanish either.

60. A surveillance video of the incident at the hospital shows that DEMIX RUIZ-HERNANDEZ, LESLIE LUGO, JONATHAN RUIZ-HERNANDEZ, MIGUEL SANCHEZ, AND JOSE RUIZ-HERNANDEZ did not batter and/or assault any of Defendant officers.

61. A surveillance video of the incident at the hospital shows that the Defendant police officers did all the damage to the hospital and falsely blamed the damage on the decedent's family members.

62. A surveillance video of the incident at the hospital shows that DEMIX RUIZ-HERNANDEZ, LESLIE LUGO, JONATHAN RUIZ-HERNANDEZ, MIGUEL SANCHEZ, and JOSE RUIZ-HERNANDEZ did not obstruct justice and/or resist arrest by Defendant officers.

63. The use of force initiated by Defendant officers and the failure to intervene in the use of that force caused an excessive amount of force to be inflicted onto the bodies of Plaintiff's DEMIX RUIZ-HERNANDEZ, LESLIE LUGO, JONATHAN RUIZ-HERNANDEZ, MIGUEL SANCHEZ, AND JOSE RUIZ-HERNANDEZ. This force was unreasonable and unnecessary.

64. Unbeknownst to the assaulting officers was the fact that the patriarch of the Ruiz-Hernandez family was a recently retired police Lt. in another jurisdiction, who was a police officer for 34 years; which is why the family members offered no resistance.

65. As a direct and proximate result of one or more of the described acts or omissions of DEFENDANT OFFICERS, Plaintiff DEMIX RUIZ-HERNANDEZ, LESLIE LUGO, JONATHAN RUIZ-HERNANDEZ, MIGUEL SANCHEZ, AND JOSE RUIZ-HERNANDEZ were caused to suffer serious and permanent personal injury, pain, suffering and mental anguish, both now and in the future.

66. On or about November 12-13, 2017, defendant officers were on duty at all times relevant to this Complaint, duly appointed, and were sworn police officers for City of Fall River, Freetown, Somerset, Swansea, and Massachusetts State Police.  Defendant officers are sued in their individual capacity.

67. In addition, Defendant officers conspired to injure Plaintiff's by:

> (a) agreeing not to report each other after witnessing Plaintiff's being beaten;
> (b) collectively beating and/or failing to intervene in the beatings;
> (c) generating false documentation to cover-up for their own misconduct;

---

[1] Since this incident occurred, Dimex Ruiz-Hernandez has started to learn some English so he can understand these proceedings.

(d) withholding information from the Bristol County District Attorney's Office and the State's Attorney, knowing that by withholding the information, Plaintiff's would suffer the consequences of having to defend frivolous criminal litigation, which, if Plaintiff's were found guilty, would cause Plaintiff's to be subject to severe penalties in the form of thousands of dollars as well as a period of time in jail.

68. In connection with the above conspiracy, Defendant officers specifically engaged in communication on or about the date of Plaintiff's arrest, whereby Defendant officers agreed to facilitate, engage in and support the activity which occurred in connection with the allegations set forth above. As a result of this conspiracy, Defendant officers, by and through their misconduct, proximately caused Plaintiff to be charged with criminal allegations, incur financial loss, including attorney fees and, inter alia, suffer emotional damage.

<u>MONELL LIABILITY</u>

69. It is the custom, practice and policy of police officers and/or their supervisors/agents and/or other employees of City of Fall River to perform the following acts and/or omissions in connection with allegations of misconduct that are directed at City of Fall River and its police officers:

(a) generate false documentation to cover-up for the misconduct of police officers;
(b) supervisory individuals from city fail to properly discipline and / or prosecute officers from the police department that have committed an act of misconduct on another;
(c) supervisory individuals from city fail to properly investigate a complaint of misconduct perpetrated by a city police officer, on another.

70. Prior to November 12, 2017, supervisory individuals from City of Fall River failed to take proper remedial action against a Fall River police officer once it was determined that an illegal act, an act of excessive force, false arrest and/or malicious prosecution had been committed by the officer. This practice and/or custom has gone unchecked and been allowed to exist in the City of Fall River for a significant period of time; so much so, that police officers recognized that they would not be punished for committing such acts and that, in fact, these acts are either permitted or quietly consented to by superior officers of city in order to permit such conduct to reoccur.

71. A code of silence exists, between the officers of the city police department so as to obstruct the legal process (preventing the free flow of honest information with regard to acts of misconduct).

72. Examples of the illegal and/or inappropriate conduct of city Police Officers has been alleged and / or substantiated in the following federal court cases alleging federal civil rights violations over the 25+ years prior to the shooting on November 12, 2017 (excessive force, making false reports, providing false and/or misleading information in causing detentions,

arrests, imprisonments and/or malicious prosecutions based on fabricated and/or misleading statements and/or engaging in similar acts of misconduct):

| Federal Court No. | Caption | Filed | Closed | Comment |
| --- | --- | --- | --- | --- |
| 1:92-CV-10961-PBS | Olsen v. Correiro, et al | 4/24/1992 | | Fall River police officers withheld critical evidence, resulting in life sentence in prison. Conviction vacated |
| 1:92-CV-12393-RBC | Medeiros v. Oltarzewski et al | 10/2/1992 | Settlement | Death of individual |
| 1:92-CV-12567-MEL | Viveiros et al v. City of Fall River et al | 10/26/1992 | Settled Viveiros 145,000 and Rego 70,000 | |
| 1:94-CV-10453-JLT | Belovitch v. City of Fall River | 3/8/1994 | | |
| 1:95-CV-10887-REK | Dumont v. City of Fall River | 5/1/1995 | Settlement | |
| 1:95-CV-10929-PBS | McLaughlin v. Doe, et al | 5/5/1995 | | |
| 1:96-CV-10233-RCL | Connolly v. City of Fall River et al | 2/7/1996 | Settlement | |
| 1:96-CV-12519-MEL | Corn v. City of Fall River, et al | 12/13/1996 | Settlement | |
| 1:97-CV-10046-MEL | Duclos v. City of Fall River, et al | 1/9/1997 | Settlement | |
| 1:97-CV-10585-REK | Cyr, et al v. City of Fall River, et al | 3/13/1997 | Settlement | |
| 1:97-CV-11415-DFW | Finch, et al v. City of Fall River, et al | 6/23/1997 | | |
| 1:00-CV-10079-RWZ | Revoredo v. City of Fall River et al | 1/18/2000 | | Death by police shooting.  Man very drunk with knife shot after speaking with police for 8 minutes. |

| 1:02-CV-10071-MEL | Thiboutot v. Jackson et al | 1/15/2002 | Settlement | |
| 1:03-CV-10985-RCL | Viera v. City of Fall River et al | 5/23/2003 | Settlement | Death by police shooting – Wife called police on husband, who was having a mental breakdown. Police spoke to husband but shot him when he would not drop knife as ordered. |
| 1:04-CV-10991-NG | White et al v. Madonna et al | 5/3/2004 | Settlement | Two Patrons falsely charged with offenses. Filed suit for assault and battery, wrongful imprisonment, and malicious prosecution. |
| 1:07-CV12134-GAO | Ferriera v. City of Fall River, et al | 11/14/2007 | Disposition unknown | Filed suit for assault and battery, wrongful imprisonment, and malicious prosecution. |
| 1:09-CV-10572-GAO | Roque v. City of Fall River et al | 4/14/2009 | Settled | Fall River Officer Michael Pessoa and Dennis Gagne severely beat 16 year old boy and lacerated his spleen |
| 1:09-10877-RBC | Carbajal v. Smith, et al | | Settled for 90,000 | Violent assault w permanent injuries |
| 1:09-CV-10887-RBL | Machado et al  v. Madonna et al | 5/26/2009 | Settled | Karen Machado and Joseph Conchinha assaulted by Officer Madonna in their |

| | | | | |
|---|---|---|---|---|
| | | | | home – Officer Madonna not prosecuted, despite history of assaults. Madonna applies for disability |
| 1:11-CV-11111-JLT | Alison Acevedo, Estate of Dennis Mendez, v. | 4/12/11 | Settled | Police execute search warrant and see Mendez trying to swallow contraband and severely beat him. |
| 1:12-CV-10194-DPW | Rivera v. Lavoie, et al | 2/1/2012 | Settled | Police forcibly remove medical device from man in custody |
| 1:14-CV-12989-NMG | Salvidar v. Pridgen, et al | 7/14/2014 | 600,000 judgment | Officer Pridgen rapes and beats Salvidar in her home after she requests police assistance. Officer Pridgen not prosecuted and simply allowed to resign. |
| 1:14-CV-14355 | Thompson v. Barboza | 12/8/2014 | Settled for 72,500 | Police officer unlawfully seizes phone of man recording him and arrests him even though First Circuit already held this is lawful activity. Police then deleted cell phones content, which was critical evidence in case. |

| 1:14-CV-13749-NMG | Kotlin v. City of Fall River et al | | Undisclosed Settlement 1/9/2019 | Filed suit for 1983 violations, and excessive force against person over 60 |
| --- | --- | --- | --- | --- |
| May 16, 2016 | Scott Macomber | 5/16/2016 | | Death.  Scott Macomber was present when police arrested a female.  A witness stated Macomber had his cell phone and was videoing arrest when police attacked him.  His autopsy showed blunt trauma to his head, back, legs, back, and contusions.  He was tasered 3 times, and died right after being removed from premises.  On May 16, 2017, Bristol County DA finds police assault was unrelated to death, and that heart disease caused death. |
| 1:17-CV-10499-MPK | Roldan v. Pessoa, et al | 3/24/2017 | Settlement 3/25/2019 | Officer Michael Pessoa and another officer beat man and shatter his leg below knee (into pieces) while kicking him, severely disabling him |

| 2018 | Victim Larry Ruiz-Barreto | 11/12/2017 | | Shot 6 times at point blank range, while simply minding own business seated in his car parked on side of road |
|------|---------------------------|------------|---|-----------------------------------------------------------------------------------------------------------------|
| 2018 | Victims – Family of Larry Ruiz-Barreto | 11/13/2017 | | Family members violently attacked **on surveillance video** at Charlton Memorial Hospital 2 hours after shooting by Officer Michael Pessoa and an army of police officers, and then falsely charged with numerous crimes.  No police officers charged despite video showing several assaulted family members. Officer Pessoa's false report widely disseminated by Bristol County DA's office. Bristol County DA's office withholding all discovery requested in Feb 2018 in violation of Rule 14. |

73. On information and belief, not a single police officer in any of the above federal cases had been prosecuted for a criminal act stemming from these civil actions prior to November 12, 2017 – including Defendant Michael Pessoa; (who fabricated the hospital assault report in the present case), who was recently indicted for multiple felonies spanning several years after a mountain of evidence of long-term criminal wrongdoing could no longer be ignored.

74. The City of Fall River is a duly incorporated municipal corporation and is the employer and principal of the Defendant Officers as well as the other officers referred to in this Complaint, as indicated in the Monell claim alleged here. At all times material to this Complaint, Defendant officers were acting under color of state law, ordinance and/or regulation, statutes, custom and usages of the City of Fall River Police Department.

75. Plaintiffs are informed and believe and thereon allege that Defendant City of Fall River, by and through its supervisory employees and agents, FORMER CHIEFS OF POLICE DANIEL RACINE AND ALBERT DUPERE, JASIEL CORREIA, and DOES 1-25, inclusive, has and had a mandatory duty of care to properly and adequately hire, train, retain, supervise, and discipline its police officers so as to avoid unreasonable risk of harm to detainees. With deliberate indifference, the City of Fall River and Does 1-25, inclusive, failed to take necessary, proper, and/or adequate measures to prevent the violation of the decedent and Plaintiffs' rights.

76. Plaintiffs are informed and believe and thereon allege that Fall River Police Chiefs DANIEL RACINE, ALBERT DUPERE, and MAYOR JASIEL CORREIA and Does 1-25, inclusive, breached their duty of care to the public in that they failed to adequately train, supervise, and discipline their police officers in the proper making of detentions, arrests and use of force.  This lack of adequate supervisorial training demonstrates the existence of an informal custom, policy or practice of promoting, tolerating, and/or ratifying with deliberate indifference the continued making of unlawful detentions, arrests, malicious prosecutions, and use of excessive force against citizens by Fall River police officers, by defendant police officers, and DOES 1-25 inclusive.

77. Plaintiffs are informed and believe and thereon allege that DANIEL RACINE AND ALBERT DUPERE, AND JASIEL CORREIA and DOES 1-25, inclusive, breached their duty of care to the public in that they have failed to discipline defendants and DOES 1-25 inclusive, for their respective misconduct and involvement in the incident described herein. Their failure to discipline defendants and DOES 1-25 inclusive, demonstrates the existence of an entrenched culture, policy or practice of promoting, tolerating and/or ratifying with deliberate indifference the making of improper detentions and arrests, the use of excessive and/or deadly force and the fabrication of official reports to cover up defendants and DOES 1-25's inclusive, misconduct.

78. Plaintiffs are informed and believe and thereon allege that members of the Fall River Police Department, including, but not limited to, defendants and/or DOES 1-25 and/or each of them, have individually and/or while acting in concert with one another, engaged in a repeated pattern and practice of making improper detentions and/or false arrests and using excessive, arbitrary and/or unreasonable force against individuals, including, but not limited to the decedent

and Plaintiff's – because they had no fear of being prosecuted for criminal acts while wearing a Fall River police officer's uniform.

79. Plaintiffs are further informed and believe and thereon allege that said customs, policies, patterns and/or practices are the product of a culture of tolerance at City of Fall River's Police Department in which verbal abuse, physical assaults, unreasonable detentions, false arrests, fabrication of police reports and/or the violation of citizen's civil rights are ignored, encouraged and/or accepted as proper conduct by Fall River Police Officers.

80. Plaintiff is further informed and believes and thereon alleges that as a matter of official policy -- rooted in an entrenched posture of deliberate indifference to the constitutional rights of primarily the minority citizens, defendant City of Fall River has long allowed its citizens, such as the decedent and all Plaintiff's in this action, to be subjected to the use of excessive force by its police officers, including by defendants and/or DOES 1-25 and/or each of them, individually and/or while acting in concert with one another.

81. As a result of the pre-existing customs, policies, patterns and/or practices of such abuses by members of defendant City of Fall River's Police Department, decedent and Plaintiff's were subjected to the violation of their constitutional rights as alleged herein.

## MALICIOUS PROSECUTION

82. On November 13, 2017, the Fall River Police Department issued a public bulletin in relation to this police shooting, and it stated in part:

> At this time the incident is still under investigation by the Bristol County District Attorneys' Office, Massachusetts State Police Detectives assigned to the Bristol County District Attorneys' Office, State Police Crime Scene Unit, Fall River Police Department Major Crimes Division and the Fall River Police Crime Scene Unit. *A concurrent investigation is being performed by the Office of Professional Standards*.

83. One of the three senior members of the Professional Standards Unit that immediately began investigating this shooting is Sergeant James T. Hoar, brother of Nicholas Hoar (who did the police shooting).

84. At all pertinent times DEFENDANT FALL RIVER POLICE DEPARTMENT'S officers knew they would incur no significant risk of discipline or dismissal from employment for participating in or covering up the use of excessive force and assault and battery of the PLAINTIFFS, because all officers were aware of the policy and practices of the DEFENDANTS CITY OF FALL RIVER, and its supervising police officials, of conducting superficial investigations of allegations of constitutional violations by the officers and not disciplining its police officers for such violations.  This case provides another textbook example of this, as this

case was directly investigated by the Professional Standards Unit which employs Nicholas Hoar's brother, Sgt. James T. Hoar.

85. On November 12-13, 2017, DEMIX RUIZ-HERNANDEZ, LESLIE LUGO, JONATHAN RUIZ-HERNANDEZ, MIGUEL SANCHEZ, and JOSE RUIZ-HERNANDEZ were all beaten by the army of mostly Fall River police officers at Charlton Memorial Hospital, falsely arrested for crimes they did not commit, and charged with multiple criminal offenses in Fall River District Court by the Bristol County District Attorney's Office.

86. In January 2018, PLAINTIFF DEMIX RUIZ-HERNANDEZ retained the Law Offices of Joseph J Voccola & Associates to represent him.  David Morra, Esq. entered his appearance.

87. On or about February 16, 2018, Attorney Morra requested dozens of items of discovery pursuant to Rule 14 of the Criminal Rules of Procedure, and Massachusetts law requires that these requests be complied with immediately.

88. Defense counsel for the other Plaintiff's filed some criminal discovery requests too.

89. Attorney Morra has provided the Fall River District Court with documentation indicating that the police shooting was not justified, which is contrary to the findings made by the Bristol County District Attorney's Office on March 16, 2018, and he provided the court with information indicating that the police violently assaulted the Plaintiffs at the Hospital.  Attorney Morra obtained 3 court orders for the dozens of items of requested discovery related to the shooting, including the police officer's phone records, all police communications, police officer statements, witness statements, photographs, scientific evidence, audio files, computerized information, and a host of other requests, etc…, but the Bristol County District Attorney's Office refused to turn any of the requested records over, in direct violation Rule 14 of the Rules of Criminal Procedure, and Rules 3.4, 3.8(d), and 8.4 (Misconduct) of the Massachusetts Rules Professional Conduct.

90. On October 15, 2018, a trial date was set for Plaintiffs LESLIE LUGO, JONATHAN RUIZ-HERNANDEZ, MIGUEL SANCHEZ, and JOSE RUIZ-HERNANDEZ, in Fall River District Court.

91. The key Commonwealth witness, Fall River Police Officer MICHAEL PESSOA, who wrote the false police reports about what happened in the Hospital, failed to show up to testify.

92. The trial justice took the security video of the Hospital incident into his chambers and watched it – and he then dismissed all charged against Plaintiffs LESLIE LUGO, JONATHAN RUIZ-HERNANDEZ, MIGUEL SANCHEZ, and JOSE RUIZ-HERNANDEZ.

93. Plaintiff Demix Ruiz-Hernandez's was not present on October 15, 2018, as his trial date for October 15, 2018 had been continued after the District Attorney's Office had failed to comply

with the court orders issued on July 31, 2018 and again on October 5, 2018, by failing to provide
Attorney Morra with the requested discovery.  Another compliance deadline was set for
November 9, 2018, and the Bristol County District Attorney's Office again failed to turn the
discovery over.

94. The Bristol County District Attorney's Office has never complied with the Court orders
to turn the discovery over, non-withstanding 3 court orders to do so, and the charges against
PLAINTIFF DEMIX RUIZ-HERNANDEZ were also dismissed in 2019 as a result.

95. On December 19, 2019, a news article appeared in the Fall River Herald indicating that
the Commonwealth's star witness and reporting officer regarding the Hospital beatings,
Defendant Officer Michael Pessoa, was involved in serious criminal wrongdoing dating back to
2014, which included several incidents involving beating innocent citizens and falsifying other
police reports to cover up his and other officers criminal acts.  This misconduct occurred while
Plaintiff's were being wrongfully prosecuted based on Officer Pessoa's report, and the Bristol
County District Attorney's Office unlawfully withheld this specifically requested information, in
direct violation Rule 14 of the Rules of Criminal Procedure, and Rules 3.4, 3.8(d), and 8.4
(Misconduct) of the Massachusetts Rules Professional Conduct.

## DAMAGES

96. As a consequence of Defendants violation of Plaintiff's federal civil rights under 42
U.S.C. § 1983, Massachusetts Civil Rights M.G.L. c. 12 Sec 11I, and the Fourth and Fourteenth
Amendments, Plaintiff  L.A. R-L was mentally, and emotionally injured and damaged as a
proximate result of decedent's wrongful death, including but not limited to: Plaintiff L.A. R-L's
loss of familial relations, decedent's society, comfort, protection, companionship, love, affection,
solace, and moral support.

97. Minor Plaintiff, L.A. R-L, by and through her Parent and Next Friend, JAYLIMAR
NATAL-LUGO, is entitled to recover wrongful death damages pursuant to M.G.L. c. 229, § 2
and Probate Code Section 1-301 and 1-302.

98. Plaintiff, ESTATE OF LARRY RUIZ-BARRETO, by and through, JAYLIMAR NATAL-
LUGO, the personal representative of Larry Ruiz-Barreto's estate, is entitled to recover wrongful
death damages pursuant to G.L. c. 229, § 2 and Probate Code § 1-301 and 1-302.  Additionally,
Plaintiff JAYLIMAR NATAL-LUGO is entitled to the reasonable value of funeral and burial
expenses pursuant to G.L. c. 229, § 2.

99. Plaintiff, ESTATE OF LARRY RUIZ-BARRETO, is entitled to recover damages by and
through JAYLIMAR NATAL-LUGO AND L.A. R-L, the personal representative of decedent's
estate pursuant to his right of survivorship for the pain and suffering he endured as a result of the
violation of his civil rights.

100.     As a further direct and proximate result of defendants' intentional and/or negligent conduct, Plaintiff L.A. R-L has been deprived of decedent's support.

101.     As enumerated herein, all Plaintiffs have sustained damages and found it necessary to engage the services of private counsel to vindicate the rights of decedent and Plaintiffs' rights under the law.  Plaintiffs are therefore entitled to an award of attorney's fees and/or costs pursuant to statute(s) in the event that they are the prevailing parties in this action under 42 U.S.C. §§ 1983, 1985-86 and 1988 and M.G.L. c. 12 Mass. Civil Rights Act § 11I.


**CLAIMS of**
**ESTATE OF LARRY RUIZ-BARRETO**
(42 U.S.C. §1983)

**COUNT I –Part A**

**FAILURE TO RECRUIT, TRAIN, DISCIPLINE, and SUPERVISE**

102.     Plaintiffs incorporate all preceding paragraphs as if fully stated herein.

103.     The Defendants CITY OF FALL RIVER, FALL RIVER POLICE DEPARTMENT, and all identified and unidentified Defendants prior to and subsequent to November 12, 2017 have shown a deliberate indifference, through their actions and lack thereof, to the rights of citizens who interact with the police.  Minority citizens are especially shown indifference in this way.

104.     Defendants CITY OF FALL RIVER, FALL RIVER POLICE DEPARTMENT, and all identified and unidentified Defendants have failed to appropriately recruit and train sworn officers in a manner that would prevent officers from using excessive force, and from physically assaulting and falsely imprisoning citizens.

105.     Defendants CITY OF FALL RIVER, FALL RIVER POLICE DEPARTMENT, and all identified and unidentified Defendants have failed to appropriately recruit and train sworn officers in a manner that would prevent officers from targeting and profiling minority citizens.

106.     Defendants CITY OF FALL RIVER, FALL RIVER POLICE DEPARTMENT, and all identified and unidentified Defendants failed to appropriately recruit and train sworn officers in a manner that would prevent officers from authoring false reports, omitting pertinent facts, and neglecting to write reports, in an effort to cover up other officers' wrongdoings.

107.     Defendants CITY OF FALL RIVER, FALL RIVER POLICE DEPARTMENT, and all identified and unidentified Defendants have failed to appropriately discipline any officers known to have been involved in the shooting, assaults and cover ups, pertaining to the aforementioned events. As a result of the above-described violation of rights, all Plaintiff's in

each Count set forth below have suffered great pain of mind and body and have been otherwise damaged.

## COUNT I - Part B

### Claim Against Officer Nicholas Hoar for Violating Larry Ruiz-Barreto's Fourth Amendment Rights Predicated on The Intentional or Reckless Use of Deadly Force During the Course of an Unlawful Seizure in Violation of 42 U.S.C. § 1983

108.      Plaintiffs incorporate all preceding paragraphs as if fully stated herein.

109.      The Fourth Amendment to the United States Constitution guarantees citizens the right to be secure in their person against the use of excessive and/or deadly force during the seizure of a person.

110.      By the means of Officer Hoar's action of pointing his weapon at Larry Ruiz-Barreto, his verbal commands and show of force, his freedom of movement was restrained and prohibited and he was seized within the meaning of the Fourth Amendment.

111.      Officer Hoar's shooting of Larry Ruiz-Barreto, under the color of State law, was intentional or reckless conduct. Officer Hoar:

a.  Placed his gun in a live fire setting;
b.  Pointed his gun at Larry Ruiz-Barreto;
c.  Placed his finger inside the trigger guard;
d.  Placed his finger on the trigger;
e.  Discharged his gun by intentionally or recklessly applying force to the trigger; and
f.  Intended to shoot Larry Ruiz-Barreto and to cause him severe physical injury or death.

112.      At the time of the shooting, Larry Ruiz-Barreto was defenseless; was a mere spectator at a race; he had no criminal record and had not committed a crime; was not a suspect concerning the commission of a crime; was not armed; did not resist the police; did not attempt to flee like everyone else; and posed no immediate or future threat of harm to Officer Hoar, other police officers, or any other person; and the investigative stop executed by Defendant Hoar was unlawful as it was based on a mere "hunch."

113.      Officer Hoar's investigative stop based on a mere hunch was unlawful and his intentional or reckless use of deadly force was excessive and unjustified, both in violation of Mr. Ruiz-Barreto's right to be free from unreasonable seizures of his person secured under the Fourth Amendment.

114.      As a direct and proximate cause of Officer Hoar's intentional or reckless conduct, Larry Ruiz-Barreto was subjected to excessive force during the course of an unlawful investigative stop and seizure in violation of his Fourth Amendment rights and was killed.

115.      Officer Hoar's violation of Larry Ruiz-Barreto's Fourth Amendment right through his intentional use of deadly force was clearly established under existing case law or general

Fourth Amendment principles and statements of law such that it was apparent to him that his conduct was unlawful and unconstitutional.

116.     Officer Hoar's intentional or reckless and excessive use of deadly force was such an obvious and/or apparent violation of the Fourth Amendment general prohibition against unreasonable force that a reasonable officer would not have required prior case law to be on notice that his conduct was unlawful and unconstitutional.

117.     A reasonable police officer in Officer Hoar's position should have understood that his conduct violated Larry Ruiz-Barreto's right to be free from the excessive use of deadly force.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## COUNT I – Part C

**Claim Against Officer Nicholas Hoar For Violating Larry Ruiz-Barreto's
Fourth Amendment Rights by his Objectively Unreasonable conduct, including
The unlawful Investigative Stop, Exceeding the Lawful Scope of an Investigative Stop and
Seizure, and Infliction Of Unreasonable Deadly Force During The Course
Of A Seizure in Violation Of 42 U.S.C. § 1983**

118.     Plaintiffs incorporate all preceding paragraphs as if fully stated herein.

119.     The Fourth Amendment to the United States Constitution guarantees citizens the right to be secure in their person against unreasonable seizures of the person.

120.     A Fourth Amendment violation occurs when a police officer's actions resulting in the discharge of his weapon during a seizure causes injury or death and those actions leading to and culminating in the discharge of his weapon are objectively unreasonable.

121.     Officer Hoar's shooting of Larry Ruiz-Barreto during the course of a seizure constituted the reckless and unreasonable use of excessive force in violation of his rights secured under the Fourth Amendment.

122.     At the time of his seizure, Larry Ruiz-Barreto had not committed a crime, was not a suspect concerning the commission of a crime, and was not the target of the search warrant.

123.     At the time of his seizure, Larry Ruiz-Barreto was unarmed, harmless, and defenseless.

124.     Larry Ruiz-Barreto immediately surrendered to the authority of the police and their show of force by putting his hands in plain view and in the air in a surrender position, a position maintained until Officer Hoar shot him, and posed no immediate or future threat to any police officer or anyone else.

125.     At all times before the shooting, Larry Ruiz-Barreto did not resist his seizure or attempt to move or flee.

126.     Officer Hoar's act of shooting Larry Ruiz-Barreto was reckless and objectively unreasonable in the following respects:

    a.     Larry Ruiz-Barreto was a law-abiding citizen and parked on the side of the road;

    b.     Officer Hoar lacked reasonable suspicion to believe that Larry Ruiz-Barreto was involved in criminal activity;

    b.     Officer Hoar lacked articulable reasonable suspicion to believe that Larry Ruiz-Barreto was armed or dangerous;

    d.     Officer Hoar lacked a lawful basis for conducting the investigatory stop of Larry Ruiz-Barreto;

    e.     Officer Hoar violated police protocols, which are designed to protect citizens and officers: (1) by unlawfully executing the investigatory stop, (2) by placing his police vehicle in front of the 1997 Acura instead of in the rear of it, (3) by failing to wait for backup to arrive; (4) by keeping the scene frozen and awaiting until sufficient police assistance arrived; (5) by getting out of his police vehicle with his weapon and banging his police issued weapon on the windshield on the 1997 Acura in a threatening manner; (6) by shooting into a vehicle which posed no threat of harm, from the driver's side, while standing; (7) by fabricating a false story that he could not take evasive actions rather than shoot Larry Ruiz-Barreto; (8) by fabricating a false story that Larry Ruiz-Barreto drove into him and knocked him up onto the hood on the 1997 Acura, and stating that he fired from the hood of the Acura, as the evidence shows this is impossible.

    f.     Officer Hoar pulled the trigger 6 times and shot Larry Ruiz-Barreto even though he was not fleeing, was not resisting his seizure, was not making any furtive movements, was not posing any threat to Officer Hoar or any other officer or person, and while he was complying with police commands.

127.     Officer Hoar's unreasonable conduct and use of excessive force described in the preceding paragraphs was contrary to and in violation of established police protocols and standards concerning the seizing of a person; clearly established constitutional rights; FRPD's Policy on Seizures and Use of Force; and/or Officer Hoar's training, and clearly exceeded the scope of a lawful traffic stop and seizure.

128.     All of Officer Hoar's actions leading up to and resulting in the shooting of Larry Ruiz-Barreto were committed under the color of State law.

129.     Officer Hoar's objectively unreasonable actions (as described above) committed during the seizure of Larry Ruiz-Barreto were the direct and proximate cause of the shooting and his resulting death.

130.     Officer Hoar's violation of Larry Ruiz-Barreto's Fourth Amendment right through his of excessive deadly force, was clearly established under existing case law or general Fourth Amendment principles and statements of law such that it was apparent to Officer Hoar

that his conduct was unlawful and unconstitutional. Specifically, it was apparent and/or clearly established in this judicial circuit and in other circuits that harm inflicted during the course of an intentional seizure constitutes a violation of the Fourth Amendment where the officer's conduct resulting in the harm was objectively unreasonable.

131.     Officer Hoar's use of excessive deadly force, was such an obvious and/or apparent violation of the Fourth Amendment general prohibition against unreasonable force that a reasonable officer would not have required prior case law to be on notice that his unreasonable conduct was unlawful and unconstitutional.

132.     A reasonable police officer in Officer Hoar's position should have understood that his conduct violated Larry Ruiz-Barreto's right to be free from the excessive use of deadly force.

WHEREFORE, the Plaintiffs demand judgment against Officer Hoar in an amount that provides full and fair compensation for the violation of Larry Ruiz-Barreto's Fourth Amendment rights, for the costs of this action, for attorney's fees, for interest as allowed by law, and for all other just and proper relief.

## COUNT I – Part D

### Claims Against Officer Nicholas Hoar Predicated Upon Reckless Or Callous Indifference To Larry Ruiz-Barreto's Rights Under The Fourteenth Amendment To The United States Constitution In Violation of 42 U.S.C. § 1983
### (Substantive Due Process: State-Created Danger)

133.     Plaintiffs incorporate all preceding paragraphs as if fully stated herein.

134.     The Fourteenth Amendment protects citizens from the deprivation of life, liberty, or property without due process of law.

135.     Prior to his death on November 12, 2017, Larry Ruiz-Barreto was not a criminal suspect and the Fall River police did not reasonable suspicion to perform an investigative stop, reasonable suspicion that he was involved in criminal activities, nor did they have probable cause to arrest him or to otherwise take him into custody.

136.     At the time of his seizure, Larry Ruiz-Barreto had not committed a crime and he was not a suspect concerning the commission of a crime.

137.     At the time of his seizure, Larry Ruiz-Barreto was unarmed and defenseless.

138.     Larry Ruiz-Barreto posed no immediate or future threat to the officers.

139.     Larry Ruiz-Barreto immediately surrendered to the authority of Officer Hoar and his show of force by putting his hands in plain view.

140.     Defendant Hoar's actions created a strong likelihood of serious harm to Plaintiff, or increased Plaintiff's risk of serious harm.

141.     Defendant Hoar was aware of the risk and consciously failed to take reasonable measures to prevent harm to Plaintiff, or Defendant acted maliciously or recklessly with intent to inflict injury.

142.     It was foreseeable by Defendant Hoar that his actions would lead to the serious injury to Plaintiff or death of Plaintiff.

143.     Defendant Hoar's actions resulted in a State-created danger and caused Plaintiff's death, and violated decedents substantive due process rights secured by the Fourteenth Amendment, as Officer Hoar's actions "shock the conscience."

WHEREFORE, the Plaintiffs demand judgment against Officer Hoar in an amount that provides full and fair compensation for the violation of Larry Ruiz-Barreto's Fourteenth Amendment rights, for the costs of this action, for attorney's fees, for interest as allowed by law, and for all other just and proper relief.

## COUNT I – Part E

**Claims Against Nicholas Hoar For Punitive Damages Under 42 U.S.C. § 1983 Predicated On The Excessive Use Of Deadly Force In Violation Of The Fourth Amendment And For The Deprivation Of Life Without Due Process Of Law In Violation Of The Fourteenth Amendment**

144.     Plaintiffs incorporate the preceding paragraphs as if fully stated herein.

145.     Officer Nicholas Hoar's actions as expressly set forth above resulting in the death of Larry Ruiz-Barreto were motivated by evil motive or intent or were committed recklessly or with callous indifference to Larry Ruiz-Barreto's federally protected rights under the Fourth and Fourteenth Amendments.

WHEREFORE, the Plaintiffs demand judgment against Officer Hoar for punitive damages for the violation of Larry Ruiz-Barreto Fourth and Fourteenth Amendment rights, for the costs of this action, for attorney's fees, and for all other just and proper relief.

## Count II
### (Survival action: Violation of decedent's civil rights)
### (42 U.S.C. §1983)

(Plaintiff JAYLIMAR NATAL-LUGO as personal representative of decedent's estate)

146.     Plaintiffs incorporate all preceding paragraphs as if fully stated herein.

147.     Larry Ruiz-Barreto was forced to endure great conscious pain and suffering because of the Defendant Hoar's conduct before his death.

148.     Plaintiff, JAYLIMAR NATAL-LUGO, as personal representative of the ESTATE OF Larry Ruiz-Barreto claims damages for the conscious pain and suffering incurred by Larry Ruiz-Barreto, as provided for under 42 U.S.C. §1983.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## Count III
### (Conspiracy to Violate Decedent's Civil Rights)
### (42 U.S.C. §§ 1985, 1986)

149.     Plaintiffs incorporate all preceding paragraphs as if fully stated herein.

150.     In doing the acts complained of herein, Defendant police officers and DOES 1 – 25 and each of them acted in concert and conspired to violate decedent's federal civil rights to be free from unreasonable seizures and excessive and/or arbitrary force, and violated the Plaintiff's right to due process by withholding, concealing, suppressing, and/or destroying material evidence in contravention of the protections set forth in the Fourth and Fourteenth Amendments to the United States Constitution..

151.     Defendants and DOES 1 – 25 and each of them had knowledge of the wrongs, and did attempt to conceal the excessive use of force and hide the true cause of decedent's demise to deprive Plaintiffs of their right to seek redress, all in violation of rights, privileges, and immunities secured by the Fourth and Fourteenth Amendments to the United States Constitution.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## COUNT IV

### (Violation of Decedent's Right To Enjoy Civil Rights)
### (Violation of M.G.L. c.12, Sec.11I)

152.     Plaintiffs incorporate all preceding paragraphs as if fully stated herein.

153.     Defendant Hoar's above-described conduct constituted interference, and attempted interference, by threats, intimidation and coercion, with decedent's peaceable exercise and enjoyment of rights secured by the Constitution and laws of the United States and the Commonwealth of Massachusetts, in violation of M.G.L. c.12, Sec.11I.

## COUNT V
### Claim Against Nicholas Hoar For Wrongful Death Under
### G.L. c. 229, § 2 Predicated on Intentional or Reckless Conduct

154.     Plaintiffs incorporate the preceding paragraphs as if fully stated herein.

155.     Officer Nicholas Hoar's shooting of Larry Ruiz-Barreto was intentional or reckless in pulling the trigger and causing physical harm to Larry Ruiz-Barreto.

156.     As an actual and proximate result of said defendant Hoar's actions, and the death of decedent, Plaintiff **L. A. R-L,** has sustained pecuniary loss resulting from the loss of comfort, society, attention, services, and support of her father, decedent, in an amount according to proof at trial.

157.     As a further actual and proximate result of said defendants' negligence, Plaintiffs incurred funeral and burial expenses, in an amount according to proof at trial.

WHEREFORE, the Plaintiffs demand judgment against Officer Hoar in an amount sufficient to fully and fairly compensate the Estate of Larry Ruiz-Barreto, under G.L. c. 229, § 2, the Massachusetts Wrongful Death Statute, for the costs of this action, for interest as allowed by law, and for all other just and proper relief.

## COUNT VI
### (Assault And Battery)

158.     Plaintiffs incorporate all preceding paragraphs as if fully stated herein.

159.     Defendant Hoar's above-described conduct constituted the intentional tort of assault and battery upon Larry Ruiz-Barreto.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## COUNT VII
### (Intentional or Reckless Infliction of Emotional Distress)

160.     Plaintiffs incorporate all preceding paragraphs as if fully stated herein.

161.     Defendant Hoar's above-described conduct was extreme, unreasonable and outrageous.

162.     In engaging in the above-described conduct, defendant Hoar intentionally ignored or recklessly disregarded the foreseeable risk that decedent would suffer extreme emotional distress as a result of defendants' conduct.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**CLAIMS OF**
**DEMIX RUIZ-HERNANDEZ, LESLIE LUGO, JONATHAN RUIZ-HERNANDEZ,**
**MIGUEL SANCHEZ, AND JOSE RUIZ-HERNANDEZ**

**Count VIII**
**(Violation of Civil Rights)**
**42 U.S.C. § 1983; M.G.L. c.12, Sec. 11I**

163.     Plaintiffs incorporate all preceding paragraphs as if fully stated herein.

164.     The aforesaid actions and conduct by the Defendants, the CITY OF FALL RIVER, the FALL RIVER POLICE DEPARTMENT, and the INDENTIFIED AND JOHN DOE DEFENDANTS constituted threats, intimidation and/or coercion that interfered with Plaintiff's exercise and enjoyment of rights secured by the Constitutions and laws of the United States and the Commonwealth of Massachusetts.

165.     As a direct and proximate result of the above-described violation of rights, Plaintiff's suffered great pain of mind and body and was otherwise damaged beginning on November 12, 2017 when they were assaulted in the Charlton Memorial Hospital, wrongfully arrested, and then criminally prosecuted based on charges fabricated by the defendants.

166.     The INDENTIFIED AND JOHN DOE DEFENDANTS unreasonable conduct and use of excessive force on November 12, 2017, which was captured on surveillance video at the Charlton Memorial Hospital, as described in the preceding paragraphs, was contrary to and in violation of established police protocols and standards concerning the seizing of a person; clearly established constitutional rights; and FRPD's Policy on Seizures and Use of Force; and clearly exceeded the scope of a lawful seizure and arrest.

167.     Defendant CITY OF FALL RIVER did not require appropriate in-service training or re-training of officers who were known to use excessive and unnecessary force during street encounters with civilians.

168.     Defendant CITY OF FALL RIVER did not require appropriate in-service training or re-training of officers who were known to withhold, conceal, suppress, and/or destroy material evidence.

169.     Defendant CITY OF FALL RIVER did not require appropriate in-service training or re-training of officers who were known to conceal and/or ignore the existence of material civilian witnesses.

170.     Defendant CITY OF FALL RIVER did not require appropriate in-service training or re-training of officers who were known to violate the First Amendment right of persons to record police officers in the public performance of their duties.

171.     As a direct and proximate result of the above-described policies and customs, police officers in the Defendant CITY OF FALL RIVER, including the individual Defendant's in

this case, believed that their actions would not be properly monitored by supervisory officers and that misconduct would not be properly investigated or sanctioned, but would be tolerated.

172.    The above-described policies and customs demonstrated a deliberate indifference on the part of policymakers of Defendant CITY OF FALL RIVER, and were the cause of a violation of Plaintiff's rights alleged herein.

173.    As a direct and proximate result of the above-described violation of rights, the Plaintiff's suffered great pain of mind and body and was otherwise damaged.

174.    By reason of the matters stated above, which are incorporated by reference herein, all Defendants, jointly and severally, are liable to the Plaintiff  under 42 U.S.C. § 1983 and M.G.L. c. 12, § 11I, to pay monetary damage for their violation of Plaintiff's civil rights, including defendants violation of their duty to intervene to prevent the excessive use of force by fellow officers, as guaranteed by the Constitution of the United States and the Massachusetts Declaration of Rights, commencing on or about November 12, 2017, and continuing thereafter.

**Count IX**
**(Conspiracy to Violate Civil Rights)**
**(42 U.S.C. §§ 1985, 1986)**

175.    Plaintiffs incorporate all preceding paragraphs as if fully stated herein.

176.    In doing the acts complained of herein, Defendant police officers and DOES 1 – 25 and each of them acted in concert and conspired to violate Plaintiff's federal civil rights to be free from unreasonable seizures and excessive and/or arbitrary force.

177.    Defendants and DOES 1 – 25 and each of them had knowledge of the wrongs, and did attempt to conceal the excessive use of force and to deprive Plaintiffs of their right to seek redress, all in violation of rights, privileges, and immunities secured by the Fourth and Fourteenth Amendments to the United States Constitution.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

**Count X**
**(Assault and Battery)**

178.    Plaintiffs incorporate all preceding paragraphs as if fully stated herein.

179.    By reason of the matters stated above, which are incorporated by reference herein. all Defendants, jointly and severally, are liable to the Plaintiff's to pay monetary damages for the intentional tort of assault and battery on or about November 12-13, 2017.

**Count XI**
**(False Arrest)**

180.     Plaintiffs incorporate all preceding paragraphs as if fully stated herein.

181.     By reason of the matters stated above, which are incorporated by reference herein. all Defendants, jointly and severally, are liable to the Plaintiff's to pay monetary damages for intentional tort of false arrest on or about November 12-13, 2017, and thereafter.

### Count XII
### (False Imprisonment)

182.     Plaintiffs incorporate all preceding paragraphs as if fully stated herein.

183.     By reason of the matters stated above, which are incorporated by reference herein, the Defendants, jointly and severally, are liable to the Plaintiff's to pay monetary damages for the intentional tort of false imprisonment on or about November 12-13, 2017, and thereafter.

### Count XIII
### (Malicious Prosecution)

184.     Plaintiffs incorporate all preceding paragraphs as if fully stated herein.

185.     By reason of the matters stated above, which are incorporated by reference herein, all Defendants, jointly and severally, are liable to the Plaintiff's to pay monetary damages for the intentional tort of malicious prosecution commencing on or about November 12, 2017, and thereafter.

### Count XIV
### (Intentional or Reckless Infliction of Emotional Distress)

186.     Plaintiffs incorporate all preceding paragraphs as if fully stated herein.

187.     By reason of the matters stated above, which are incorporated by reference herein, all Defendants, jointly and severally, are liable to the Plaintiff's to pay monetary damages for their intentional or reckless infliction of emotional distress so severe that no reasonable person could be expected to endure through their unconscionable, outrageous and wrongful conduct, commencing on or about November 12-13, 2017, and continuing through October 15, 2018, and thereafter.

### COUNT XV

### CLAIMS of ALL PLAINTIFF'S

### (MONELL LIABILITY – PART A)
### (42 U.S.C. 1983)

188.     Plaintiffs incorporate all preceding paragraphs as if fully stated herein.

189.     Defendant CITY OF FALL RIVER has implemented an unconstitutional policy by creating an atmosphere among ALL POLICE DEFENDANTS that allowed the aforementioned actions.

190.     Defendant CITY OF FALL RIVER is directly responsible for policies that do not discourage its employees from using excessive force and assaulting citizens, particularly minority citizens.

191.     As a result of its status, Defendant CITY OF FALL RIVER had supervisory responsibility over ALL POLICE DEFENDANTS.

192.     Defendant CITY OF FALL RIVER ignored realistic opportunities they had to prevent these employees from using excessive force and assaulting and covering up the wrong doing of other employees.

193.     As against defendants DANIEL RACINE AND ALBERT DUPERE and JASIEL CORREIA and/or DOES 1-25 and/or each of them, individually and/or in their capacities as official policy-maker(s) for the City of Fall River, the Plaintiffs further allege that the acts and/or omissions alleged in the Complaint herein are indicative and representative of a repeated course of conduct by members of defendant City of Fall River and its Police Department tantamount to a custom, policy or repeated practice of condoning and tacitly encouraging the abuse of police authority, and disregard for the constitutional rights of citizens, such as Plaintiffs.

194.     Plaintiffs are informed and believe and thereon allege that the acts and/or omissions alleged herein are the proximate result of a custom, policy, pattern or practice of deliberate indifference by defendants City of Fall River, DANIEL RACINE AND ALBERT DUPERE and JASIEL CORREIA, DOES 1-25 and/or each of them, to the repeated violations of the constitutional rights of citizens by Fall River police officers, which have included, but are not limited to, repeated acts of: excessive force, making false reports, providing false and/or misleading information in causing detentions, arrests, imprisonments and/or malicious prosecutions based on fabricated and/or misleading statements and/or engaging in similar acts of misconduct on a repeated basis and failure to institute and enforce a consistent disciplinary policy and/or early warning system.

195.     Plaintiffs are further informed and believe and thereon allege that the acts and/or omissions alleged herein are the proximate result of a custom, policy, pattern or practice of deliberate indifference by defendants City of Fall River, DANIEL RACINE AND ALBERT DUPERE and JASIEL CORREIA, DOES 1-25 and/or each of them, to the repeated violations of the constitutional rights of citizens by Fall River police officers, which have included, but are not limited to, using excessive and/or deadly force on a repeated basis.

196.     Plaintiffs are further informed and believe and thereon allege that the damages sustained as alleged herein were the proximate result of customs, policies and/or practices which included, but were not limited to, the failure to adequately or appropriately hold officers accountable for their misconduct, the failure to properly and fairly investigate complaints about officers' misconduct, the failure to enact or adopt policies to ensure adequate and/or appropriate oversight of officers to prevent continuing violations of the rights of citizens.[2]

197.     The aforementioned deliberate indifference, customs, policies or practices of defendants City of Fall River, DANIEL RACINE AND ALBERT DUPERE and JASIEL CORREIA, DOES 1-25, and/or each of them, resulted in the deprivation of the constitutional rights of the decedent and Plaintiffs, including, but not limited to, the following:

    (a)    the right not to be deprived of life, liberty or property without Due Process of Law;

    (b)    the right to be free from unreasonable searches and/or seizures; and/or,

    (c)    the right to equal protection of the law.

    (d)    the right to familial relationships

    (e)    the right to enjoy civil and statutory rights

198.     Said rights are substantive guarantees under the Fourth and/or Fourteenth Amendments to the United States Constitution.

199.     The CITY OF FALL RIVER, DANIEL RACINE, AND ALBERT DUPERE and JASIEL CORREIA, knew or should have known that there was widespread customs and

---

[2]  Under 42 U.S.C. § 1983, "[a]ctions taken by a municipality's final policymakers, even in contravention of their own written policies, are fairly attributable to the municipality," and actionable under 1983.  *Simmons v. Uintah Health Care Special Service District*, 506 F.3d 1281, 1287 (10th Cir. 2007).

It is well settled "that 'serial misconduct' directed at a single victim may be sufficient to establish municipal liability" under 42 U.S.C. § 1983. *Baron v. Suffolk County Sheriff's Dept.*, 402 F.3d 225, 238 (1ˢᵗ Cir. 2005).  The police shooting of Larry Ruiz-Barreto and the coverup engineered by the City of Fall River's police officials, the Massachusetts State Police, and the Bristol County District Attorney's Office clearly falls into the category of "serial misconduct."  The "record demonstrates a pattern of ongoing harassment" that "high-ranking [City] officials were aware of and did not stop." *Baron v. Suffolk County Sheriff's Dept.*, 402 F.3d 225, 239 (1ˢᵗ Cir. 2005).  Dimex Ruiz-Hernandez was forced to watch his son's execution, the police cover-up, and then he was beaten by a small army of Fall River police officers while peacefully mourning his son's death at the Hospital, falsely arrested, falsely imprisoned, and falsely prosecuted; while the prosecution intentionally violated Rule 14 of the Criminal Rules for over a year and refused to provide any of the voluminous discovery requested, knowing it exonerated him – non-withstanding 3 court orders to turn it over.

practices of their police officers using excessive force, assaulting, and beating, and violating the civil rights of civilians.

200.     As a result of the violation of their constitutional rights by defendants CITY OF FALL RIVER, DANIEL RACINE, AND ALBERT DUPERE and JASIEL CORREIA, and/or DOES 1-25 and/or each of them, Plaintiffs sustained the injuries and/or damages as alleged heretofore in this Complaint.

201.     As a direct and proximate cause of the aforesaid actions and conduct of Defendant CITY OF FALL RIVER, Plaintiff's suffered great pain of mind and body and were otherwise damaged.

202.     As a direct and proximate result of the above-described violation of rights, Plaintiff's suffered great pain of mind and body and were otherwise damaged.

WHEREFORE, Plaintiffs pray for relief as hereinafter set forth.

## (MONELL LIABILITY – RATIFICATION -- PART B)
## (42 U.S.C. 1983)

203.     Plaintiffs incorporate all preceding paragraphs as if fully stated herein.

204.     All Defendants acted under color of law.

205.     The acts of Defendants deprived Decedent Larry Ruiz-Barreto and all Plaintiffs of their particular rights under the United States Constitution.

206.     Upon information and belief, a final policymaker, John Doe, acting under color of law, who had final policymaking authority concerning the acts of Defendants complained of herein, and ratified Defendants acts and the bases for them. Upon information and belief, the final policymaker knew of and specifically approved of Defendants acts.

207.     Upon information and belief, a final policymaker, John Doe, has determined that the acts of Defendants were "within policy."

208.     By reason of the aforementioned acts and omissions, Plaintiffs have suffered loss of the love, companionship, affection, comfort, care, society, training, guidance, and past and future support of Decedent Larry Ruiz-Barreto. The aforementioned acts and omissions also caused Decedent Larry Ruiz-Barreto pain and suffering, loss of enjoyment of life, and death.

209.     By reason of the aforementioned acts and omissions complained of herein, the Plaintiff's have and continue to suffer from physical injuries, severe emotional distress, and other injuries described herein as a result of the attack upon them by the Defendant Officers at Charlton Hospital, and because of their false arrests and malicious prosecutions, and the subsequent police cover-up.

210.     Accordingly, Defendants are liable to each Plaintiff for damages under 42 U.S.C. § 1983.

### Count XVI

### NEGLIGENCE v. City of Fall River for General Negligence, in Violation of M.G.L. c. 258 § 4

211.     Plaintiffs incorporate all preceding paragraphs as if fully stated herein.

212.     The DEFENDANT CITY OF FALL RIVER owed Plaintiff's a duty to exercise reasonable care, including but not limited to the failure to train, discipline, and supervise defendants, which it breached.

213.     As a direct and proximate result of the negligence of the Defendant City, in failing to exercise reasonable care, the Plaintiff's have and continue to suffer from physical injuries, severe emotional distress, and other injuries described herein as a result of the attack upon them by the Defendants, and the subsequent cover-up.

### PRAYER

WHEREFORE, Plaintiffs pray for relief, jointly and severally against Defendants as follows:

1.     For general damages in a sum of $30 million dollars on counts 1-7, and 15-16;

2.     For general damages in a sum of $3 million dollars for Demix Ruiz-Hernandez on Counts 8-16;

3.     For general damages in a sum of $1 million dollars each for Leslie Lugo, Jonathan Ruiz-Hernandez, Miguel Sanchez, and Jose Ruiz- Hernandez on Counts 8-16;

4.     For special damages, including but not limited to, past, present and/or future wage loss, income and support, medical expenses and other special damages in a sum to be determined according to proof;

5.     For funeral and burial expenses according to proof;

6.     For punitive damages and exemplary damages in amounts to be determined according to proof as to all defendants;

7.     For reasonable attorney's fees pursuant to 42 U.S.C. §1988 and M.G.L. c. 12 sec. 11I;

Respectfully submitted,
Plaintiffs,
By their Attorneys,

/s/ Ronald J. Resmini                          /s/ Andrew Couture
RONALD J. RESMINI, ESQ.              ANDREW J. COUTURE, ESQ
Law Offices of Ronald J. Resmini, Ltd.    Law Office of Andrew J. Couture
South Main Street, Suite 400                81 Merriam Avenue
Providence, RI 02903                         Leominster MA 01453
(401) 751-8855                                  (978) 502-0221
(401) 228-6577 (facsimile)                 Attycouture@gmail.com
efile@resminilawoffices.com


Dated: November 2, 2020