939 F.Supp. 921
United States District Court, D. Massachusetts.

Delores GONSALVES, as Administratrix of the Estate of Morris Pina, Jr., Plaintiff,
v.
CITY OF NEW BEDFORD, Leonard Baillargeon, Richard Benoit, Frederick Borges, John Bullard, Robert Devlin, Sandra Grace, John Hoffman, Patrick Lawrence, Stephen Olivera, and Michael Pacheco, Defendants.

C.A. No. 91–11993–MLW.
|
Aug. 1, 1996.

**Synopsis**

Administratrix of estate of deceased arrestee brought civil rights actions against city and police officers. Following jury verdict which awarded $5,000 for police beating and denial of medical care and which awarded $430,000 in damages for cover-up, city and police officers moved for new trial or judgment as a matter of law. The District Court, Wolf, J., held that: (1) evidence sustained finding of beating; (2) evidence sustained finding of failure to provide medical attention; (3) intentional cover-up which deprives person of right to recovery for constitutional violations gives rise to cause of action under federal civil rights statute; and (4) it was clearly established in 1990 that cover-up violated federal law.

Motions denied.

**Procedural Posture(s):** Motion for Judgment as a Matter of Law (JMOL)/Directed Verdict.

**Attorneys and Law Firms**

***923** Howard Friedman, Law Offices of Howard Friedman, Boston, MA, Harvey A. Schwartz, Robert A. Griffith, Schwartz, Shaw & Griffith, Boston, MA, for Delores Gonsalves.

Patrick T. Walsh, New Bedford, MA, for City of New Bedford.

Gerald S. McAuliffe, McParland & McAuliffe, Quincy, MA, for Leonard Baillargeon, and Stephen Oliveira.

Gerald S. McAuliffe, McParland & McAuliffe, Quincy, MA, Joseph P. McParland, Dedham, MA, for Frederick Borges, and Sandra Grace.

Edward P. Reardon, Reardon & Reardon, Worcester, MA, for Robert Devlin, and John D. Hoffman.

Sheila M. Tierney, New Bedford, MA, for Patrick Lawrence.

Armand Fernandes, Jr., City Solicitor, New Bedford, MA, John F. Folan, McLaughlin & Folan, New Bedford, MA, for Michael Pacheco.

Patrick T. Walsh, New Bedford, MA, Armand Fernandes, Jr., Fernandes, Fraze & Finnerty, New Bedford, MA, for Richard Benoit, and John K. Bullard.

*MEMORANDUM AND ORDER*

 © 2021 Thomson Reuters. No claim to original U.S. Government Works. 

WOLF, District Judge.

I. Background

After a trial on plaintiff's civil rights and wrongful death claims, the jury in phase one of this case ("Phase One") found that Leonard Baillargeon beat Morris Pina at 19 Mapleview Terrace, New Bedford, Massachusetts, and awarded $5,000 damages as a result.[1] In addition, the jury's verdict reflects the following findings. At least one defendant used unreasonable force against Morris Pina with intent to cause him bodily harm at the New Bedford Police Department headquarters. That use of force was a proximate cause of Morris Pina's death. The jury also found that at least one defendant intentionally or with deliberate indifference failed to attend to a serious medical need of Morris Pina and that too was a proximate cause of his death. Finally, the jury found that it could not determine which defendant was responsible for the constitutional violations which resulted in Morris Pina's death because each defendant in Phase One engaged in an intentional cover-up. The jury awarded $430,000 in damages in connection with the cover-up for which all of the Phase One defendants are jointly and severally liable.[2]

1 A copy of the special verdict form is attached as Exhibit A.

2 The City of New Bedford and Mayor John Bullard were not subject to liability during Phase One. Their potential liability was addressed in the second phase of the bifurcated trial.

II. Defendants' Motions For Judgment as a Matter of Law and For a New Trial

A. *Applicable Standards*

The defendants have moved for judgment as a matter of law under Federal Rule of Civil Procedure 50, or for a new trial under Federal Rule of Civil Procedure 59. The defendants have also claimed that the jury's answers to the questions on the special verdict form are inconsistent because it found intentional violations of Morris Pina's constitutional rights without identifying any individual who acted intentionally. Pursuant to Federal Rule of Civil Procedure 49(b), the defendants ask that the issue to be returned to the jury for further consideration, or for a new trial. The defendants also assert that they are entitled to qualified immunity with regard to the cover-up claim. As I will explain in detail, on careful consideration I have concluded that each of the defendants' motions is without merit. All of them, therefore, will be denied.

***924** With regard to the post-trial motions, Rule 50 is the vehicle by which the defendants seek judgment as a matter of law, notwithstanding the verdict. In order to grant such relief, I must look at the proof, and the inferences reasonably to be drawn from it, in the light most favorable to the plaintiff. I must not consider the credibility of witnesses, resolve conflicts of testimony, or evaluate the weight of evidence. Rather, I must decide whether a reasonable factfinder could find a material disputed fact by a preponderance of the evidence.[3] I may set aside the verdict only if there is insufficient evidence for a reasonable factfinder to do more than guess concerning a material fact. If reasonable minds could differ, the verdict stands unless a new trial is granted.[4]

3 *Clemente v. Carnicon–Puerto Rico Mgmt. Assoc., L.C.,* 52 F.3d 383, 388–89 (1st Cir.1995).

 © 2021 Thomson Reuters. No claim to original U.S. Government Works. 

4 *Rolon–Alvarado v. Municipality of San Juan,* 1 F.3d 74, 77 (1st Cir.1993).

With regard to the motion for a new trial, it may be granted only if I find that the outcome is against the clear weight of the evidence such that upholding the verdict will result in a miscarriage of justice.[5] I have more discretion with regard to the new trial motion than I have with regard to the motion for judgment as a matter of law. I am not required to look at the evidence in the light most favorable to the plaintiff. I am permitted to grant a new trial even if there is substantial evidence to support the verdict.[6]

5 *Conway v. Electro Switch Corp.,* 825 F.2d 593, 598 (1st Cir.1987).

6 11 Charles Alan Wright, Arthur R. Miller and Mary Kay Kane, *Federal Practice and Procedure* § 2806, p. 65.

B. *Excessive Force and Denial of Medical Care Claims*

With regard to the motion for judgment as a matter of law, I find that there is ample evidence that Leonard Baillargeon beat Morris Pina in the cruiser at 19 Mapleview Terrace. Margaret Arsenault testified that she saw Baillargeon making a punching motion down at Morris Pina, who was on the seat of the cruiser. The jury was entitled to believe that testimony.

I also find that there is ample direct and circumstantial evidence to find that Morris Pina was beaten at the police station. The jury could have properly concluded that Morris Pina had only a small abrasion on his forehead when he was brought to the jail. Robert Goff testified to hearing Morris Pina threatened with a beating if he did not shut up. Goff and Jody Masse each testified to hearing sounds consistent with a beating. Morris Pina's autopsy disclosed many injuries which the jury could have properly found he did not have when he was brought to the jail. Plaintiff's experts testified that those injuries were consistent with a beating and some, like the damage to the throat, could not have been self-inflicted.

There is also ample evidence for the jury to have found that Morris Pina was intentionally and/or with deliberate indifference denied treatment for a serious medical need. The jury could have found from the testimony of Patrick Lawrence and John Hoffman, among others, that Morris Pina was alive several hours after the beating which it found to be established. The jury could infer from pictures taken shortly after Morris Pina's death that they accurately reflect the way he looked shortly before he died. Those pictures depict conditions which a lay person would easily recognize require a doctor's attention. The jury could have reasonably concluded that Morris Pina was denied attention for a serious medical need in order to cause him to suffer or knowing that he would suffer, or with deliberate indifference to his suffering.[7] By accepting the testimony of the plaintiff's experts, the jury could properly find that Morris Pina died as a result of a beating and subsequent denial of medical care, rather than from a drug overdose, or from any other cause.

7 *See Farmer v. Brennan,* 511 U.S. 825, ——, 114 S.Ct. 1970, 1978, 128 L.Ed.2d 811 (1994) (discussing requisite state of mind for liability in denial of medical care cases); *Germany v. Vance,* 868 F.2d 9, 18 n. 10 (discussing "deliberate indifference" standard in general).

***925** I do not believe that Federal Rule of Civil Procedure 49(b) is applicable to this case. I gave the jury a special verdict form pursuant to Rule 49(a), rather than a general verdict accompanied by interrogatories under Rule 49(b). It is Rule 49(b) that the defendants rely on and which addresses inconsistencies between a general verdict and the responses to specific interrogatories. As I said, that is not the type of verdict form which I gave to the jury. The characterization of the verdict form, however, is not decisive in this case because I find that the jury's responses to questions are consistent rather than

inconsistent. More specifically, logic and the evidence in this case permitted the jury to find that Morris Pina was intentionally beaten and denied medical care without being able to identify who was responsible.[8]

[8] Specifically, the jury found that one or more of the defendants used unreasonable force against Morris Pina at the jail and that one or more of the defendants intentionally and with deliberate indifference failed to attend to his serious medical needs. The jury found further that this use of unreasonable force and denial of medical care caused Morris Pina's death. However, when asked to identify which of the individual defendants were proven to have participated in the use of unreasonable force or were proven to have denied Morris Pina medical care, the jury answered in the negative with regard to each defendant. *See* Exhibit A, pp. 6, 10.

The logic of this result is illustrated by the following analogy. If one assumes that it would be a violation of law to write graffiti in an elevator, a jury could find that if three people got on an elevator on the first floor, there was no graffiti on the walls, but when they got off on the top floor there was graffiti on the walls, one of the three intentionally wrote the graffiti on the walls. However, the jury might not be able to decide from the evidence who wrote it and therefore might not be able to find who was liable for the violation. In such circumstances, the question would be presented of whether the jury's inability to determine who committed the violation was caused by an intentional cover-up. Similarly, that question was presented properly in this case.

C. *Intentional Cover–Up Claim*

I find, once again, on further study and reflection, that there is a viable claim to recover under 42 U.S.C. § 1983 for an intentional cover-up if the cover-up caused the jury's inability to decide who is responsible for the constitutional violations which were proven and, therefore, injured the plaintiff by depriving her of the damage award she would have otherwise received. In the instant case, the jury was asked if the evidence proved that its inability to determine who violated Morris Pina's constitutional rights was caused by a cover-up. That question, in several iterations, is included on the verdict form. With regard to the constitutional violations the jury found occurred at the jail, the jury answered each of the questions, "Yes."[9] The jury was then asked and instructed to decide separately for each defendant who was proven to have participated in that intentional cover-up. The jury decided that each of the defendants did so.[10] As I have indicated, my analysis of the proof indicates that there was sufficient evidence to support this conclusion with regard to each defendant.

[9] *See* Exhibit A.

[10] *Id.,* pp. 6, 10.

With regard to the law concerning cover-up, the Supreme Court has held that individuals have a right of access to the courts which must be adequate, effective and meaningful.[11] Several Courts of Appeals held prior to 1990 that an intentional effort by police or other government officials to shield a dead victim's family from key facts which would form the basis of his survivors' claims for redress violates the constitutional rights of those survivors. Those cases include *Bell v. City of Milwaukee*[12] and *Barrett v. United States.*[13]

[11] *Bounds v. Smith,* 430 U.S. 817, 822, 97 S.Ct. 1491, 1495, 52 L.Ed.2d 72 (1977).

[12] *Bell v. City of Milwaukee,* 746 F.2d 1205, 1267 (7th Cir.1984).

 © 2021 Thomson Reuters. No claim to original U.S. Government Works. 

13 *Barrett v. United States,* 689 F.2d 324, 332 (2nd Cir.1982).

Section 1983 provides a remedy for such constitutional violations if the defendants' ***926** actions were casually connected to a plaintiff's failure to succeed in her lawsuit.[14] In such circumstances, the plaintiff has been deprived of property without due process by being deprived of the right to be awarded damages in a meritorious lawsuit as a result of the defendants' unconstitutional conduct.[15] The cases consistent with this analysis include *Barrett v. United States,*[16] *Karim–Panahi v. Los Angeles Police Department,*[17] and, to a certain extent, *Landrigan v. City of Warwick,* in which the First Circuit in 1980 affirmed the dismissal of a § 1983 cover-up claim because the plaintiff had prevailed in a state court action based on illegal police conduct and, therefore, had suffered no damages from the alleged cover-up.[18] Similarly, in *Vasquez v. Hernandez,* a 1995 Seventh Circuit ***927** case, the court found that there was no constitutional injury where the plaintiff did not claim to have been prevented from pursuing a tort action, or did not prove that the value of that action was reduced by the cover-up.[19]

14 *Landrigan v. City of Warwick,* 628 F.2d 736, 742 (1st Cir.1980); *Karim–Panahi v. Los Angeles Police Department,* 839 F.2d 621, 625 (9th Cir.1988).

15 Other courts have similarly spoken of the right of access to the courts in due process terms. *See Germany v. Vance,* 868 F.2d at 17 n. 9 (1st Cir.1989) (holding that "the right of access to the courts is a species of due process right ..."); *Ryland v. Shapiro,* 708 F.2d 967, 972–73 (5th Cir.1983) (viewing a cover-up as a potential deprivation of the "right to procedural due process under the fourteenth amendment.") After the trial on the cover-up claim, and, indeed, after the rendering of this oral decision, the defendants raised for the first time the argument that the plaintiffs had not been deprived of property without due process of law because the plaintiffs had not demonstrated the inadequacy of post-deprivation state remedies. *See Zinermon v. Burch,* 494 U.S. 113, 128–30, 110 S.Ct. 975, 984–86, 108 L.Ed.2d 100 (1990); *Hudson v. Palmer,* 468 U.S. 517, 533, 104 S.Ct. 3194, 3203–04, 82 L.Ed.2d 393 (1984). As an initial matter, this argument has been waived. A motion for judgment as a matter of law made after submission of the case to the jury cannot state grounds which were not raised in the original, pre-submission motion. 9A Wright and Miller, *Federal Practice and Procedure* § 2537, p. 344–45. *See also, Lambert v. Genesee Hospital,* 10 F.3d 46, 53–54 (7th Cir.1992) (noting that "because a j.n.o.v. motion under Fed.R.Civ.P. 50(b) ... is in reality a renewal of a motion for a directed verdict, it cannot assert new grounds for relief.") Furthermore, defendants' motion is, in essence, a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim. As such, it cannot be raised after a "trial on the merits." Fed.R.Civ.P. 12(h)(2). *See, e.g., Brown v. Trustees of Boston University,* 891 F.2d 337, 358–59 (1st Cir.1989). In any event, the defendants have not pointed to, and the court has not identified any state law which would provide an adequate remedy for the cover-up which the jury found proven. It is notable that the Massachusetts Civil Rights Act, M.G.L. ch. 12 § 11I, only applies to civil rights violations accompanied by "threats, intimidation, or coercion." There is scant, if any, evidence that the cover-up found proven in this case would satisfy this statutory requirement.

16 In *Barrett,* the decedent was killed in the 1950's as a result of his unknowing participation in a chemical warfare experiment conducted by the United States military. Lacking full knowledge of the nature and cause of the decedent's death, the decedent's estate settled for $18,000 a suit which it had filed in the New York Court of Claims. It was not until 1975 that the true circumstances surrounding the decedent's death came to light. After these revelations, the decedent's estate filed a suit in federal court alleging that it had been deprived of property without due process of law because it had accepted a settlement amount which was far less than the recovery it would have expected if it had gone to trial with the information revealed in 1975. The Court of Appeals for the Second Circuit held that such a due process right exists. The court stated:

In this instance ... the cause of action itself against New York State was not concealed—Blauer's estate did sue and

did receive some compensation. What plaintiffs are essentially claiming, however, is that the defendants' obstruction of justice in conducting a defense to that action deprived them, not of the whole of their constitutionally protected property consisting of the lawsuit, but only of a part of that protected property amounting to an increment in its value. Statutory or common law entitlement to be fully compensated through a lawsuit for one's injuries should be considered a species of property for the same reason that statutory entitlement to bring such a lawsuit at all is so considered.

*Barrett,* 689 F.2d at 332.

17 In *Karim–Panahi v. Los Angeles Police Department,* 839 F.2d 621, 625 (9th Cir.1988), the plaintiff alleged an illegal search and seizure against various police officers. Plaintiff also claimed that the officers covered up these Fourth Amendment violations by falsifying facts and destroying evidence. The Court of Appeals for the Ninth Circuit held that "[s]uch allegations may state a federally cognizable claim provided that defendants' actions can be causally connected to a failure to succeed in the present lawsuit." *Karim–Panahi,* 839 F.2d at 625. The court concluded, however, that "[b]ecause the ultimate resolution of the present suit remains in doubt, Karim–Panahi's cover-up claim is not ripe for judicial consideration." *Id.*

18 *Landrigan,* 628 F.2d at 742.

19 *Vasquez v. Hernandez,* 60 F.3d 325, 329 (7th Cir.1995).

Consistent with these principles, I instructed the jury that it would be a violation of the right of access to the courts for one or more defendants to intentionally attempt to keep the estate of Morris Pina from discovering and proving a violation of his constitutional rights, if that effort succeeded. I also instructed that a cover-up is an intentional attempt by one or more government officials to conceal facts about events to protect themselves from a potential civil lawsuit. The cover-up may also have had other objectives, such as preventing criminal prosecution. For the purposes of this case, however, it had to be shown that one purpose was a desire to frustrate the ability of Morris Pina's estate to realize that it had a claim and prove it.

The instructions, therefore, called upon the jury to find more than the mere abuses of the civil discovery process which it has been suggested might not be sufficient to establish a claim under § 1983 in two cases turning on qualified immunity on which the defendants rely.[20]

20 *Foster v. City of Lake Jackson,* 28 F.3d 425, 429 (5th Cir.1994); *Wilson v. Meeks,* 52 F.3d 1547, 1557 (10th Cir.1995).

The instructions also required more than the mere preparation of a false police report which the Court of Appeals for the First Circuit in *Landrigan* indicated was not itself actionable under § 1983.[21] Rather, in this case, the jury was required to find that any false report was intended to keep the plaintiff from discovering and proving a violation of Morris Pina's rights and that it succeeded in that effort. It is these added elements of intent and actual consequences which distinguished this case from the situation which the Court of Appeals for the First Circuit was addressing in *Landrigan.*

21 *Landrigan,* 628 F.2d at 744–45.

The fact that the plaintiff filed this lawsuit despite the immediate, intentional efforts to cover-up the beating and the denial

 © 2021 Thomson Reuters. No claim to original U.S. Government Works. 

of medical care that the jury found proven does not extinguish the defendants' potential liability for cover-up. A recent decision by the Court of Appeals for the Seventh Circuit succinctly confirmed this principle.[22] In *Nielsen v. Clayton,* the court held that: "[w]here a cover-up of a constitutional deprivation continues during trial, plaintiffs are being denied adequate, effective and meaningful access to the court."[23] I find that a more narrow formulation of this principle is appropriate; that is, where, as the jury has found in this case, a defendant initially engages in a cover-up in the hope of keeping a civil suit from being filed and continues that cover-up once a case has commenced, the plaintiff is entitled to recover under § 1983 for having been denied adequate access to the courts if because of the cover-up, the plaintiff was not awarded damages on a meritorious claim that constitutional rights were violated. I note that if the mere filing of a suit was sufficient in every case to extinguish a § 1983 claim for cover-up, the concept would be a nullity because the issue of cover-up is only presented to a court once a case is filed.

22 *See Nielsen v. Clayton,* 1995 WL 417569, * 7 (7th Cir.1995).

23 *Id.*

The fact that there were no allegations or instructions concerning a conspiracy to cover-up does not alter the validity of the plaintiff's cover-up claim. A conspiracy is not required to establish a right to recover under § 1983. Section 1983 provides a remedy for individual unconstitutional conduct, as well as for a conspiracy to violate constitutional rights.[24] The jury was instructed to ***928** consider each defendant separately and, in effect, to decide if he or she personally and intentionally took some action to cover-up what really happened to Morris Pina before this suit was filed. The instructions did not permit the jury to find liability for joining an ongoing conspiracy, or to find any form of vicarious liability. This was more favorable to the defendants than a conspiracy charge would have been.

24 Section 1983 provides, in pertinent part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights ... secured by the Constitution and laws, shall be liable to the party injured in an action at law...." 42 U.S.C. § 1983. Conspiracies are actionable under § 1983 where there has been an agreement to deprive a person of a constitutional right and an actual deprivation of that right. *Landrigan,* 628 F.2d at 742.

As I will explain later, the evidence was adequate for the jury to find each defendant individually engaged in a cover-up which was a cause of the jury's inability to identify who was responsible for violating Morris Pina's rights.

In addition, as the Second, Fifth and Seventh Circuits have found, although neither Morris Pina (as a decedent) nor the estate of Morris Pina is a person with rights for which § 1983 provides a remedy, a cover-up can violate the rights of Morris Pina's survivors who may maintain their claims through his estate. This was the conclusion of the Second Circuit in *Barrett,*[25] the Fifth Circuit in *Ryland,*[26] and the Seventh Circuit in *Bell.*[27] I agree with the reasoning and results of these decisions.

25 *Barrett,* 689 F.2d at 333.

26 *Ryland,* 708 F.2d at 973, n. 6.

27 *Bell,* 746 F.2d at 1206.

WESTLAW © 2021 Thomson Reuters. No claim to original U.S. Government Works. 

Finally, with regard to the law and instructions concerning cover-up, I note that the defendants' joint and several liability for the damages award of $430,000 is not premised on the theory that the cover-up makes them liable for the use of unreasonable force and the denial of medical care that the jury found.[28] Rather, they are liable for depriving the plaintiff of the damages she would have received on those meritorious claims but for the unconstitutional cover-up.

28 *Landrigan,* 628 F.2d at 742.

III. Qualified Immunity

As I indicated earlier, I also find that the plaintiff has proven that the defendants are not entitled to qualified immunity for their intentional cover-up in the circumstances of this case.

The standards, of course, are important here. The Supreme Court held in *Harlow v. Fitzgerald* that government officials are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.[29] I have found that: a violation of a constitutional right regarding access to the courts was asserted properly; the jury has found that it was proven; and has reached that conclusion based on adequate evidence. Therefore, the issue concerning qualified immunity is whether that right of access to the courts was clearly established in June 1990 when Morris Pina, according to the jury's findings, was beaten and denied medical care.

29 *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

The Supreme Court said in *Anderson v. Creighton* that "clearly established" means that: "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."[30] The Court of Appeals for the First Circuit reiterated this principle in *Singer v. Maine,* stating: "The manner in which [the clearly established federal] right applies to the actions of the official must be apparent."[31] It is not sufficient that a reasonable person in the defendants' position would know that he or she was doing something wrong. It must be proven that he or she would know that the conduct in question violated federal law.[32] The First Circuit emphasized this distinction recently in *Martinez v. Colon,*[33] and it has also been addressed in ***929** other cases, including cases which I have decided such as *Carey v. Fall River.*[34]

30 *Anderson v. Creighton,* 483 U.S. 635, 640, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987).

31 *Singer v. Maine,* 49 F.3d 837, 845 (1st Cir.1995).

32 *Foster,* 28 F.3d at 429.

33 *Martinez v. Colon,* 54 F.3d 980, 988 (1st Cir.1995) (explaining that a right is "clearly established" when a "reasonably prudent state actor would have realized not merely that his conduct might be wrong, but that it violated a particular constitutional right.")

34 *Carey v. City of Fall River,* 708 F.Supp. 431, 433–34 (D.Mass.1988).

Nevertheless, as the First Circuit, quoting *Anderson,* recently noted in *St. Hilaire v. City of Laconia,* the requirement that the federal right at issue must be clearly established does not mean that a government official has qualified immunity " 'unless the very action in question has previously been held to be unlawful.' "[35] Government officials are not required to faultlessly anticipate the outcome of a problematic constitutional analysis.[36] However, as the First Circuit has said repeatedly in cases such as *Germany v. Vance,*[37] and *Hall v. Ochs,*[38] "[i]n order to sustain a finding that a 'clearly established' right was violated, it is not necessary for the plaintiff to cite cases in which the specific sort of conduct complained of was found to be unlawful. 'It is enough, rather, that there existed case law sufficient to clearly establish that, if a court *were* presented with such a situation, the court would find that plaintiff's rights were violated.' "[39]

35 *St. Hilaire v. City of Laconia,* 71 F.3d 20, 24 (1st Cir.1995) (quoting *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039).

36 *Martinez,* 54 F.3d at 988.

37 *Germany,* 868 F.2d at 16.

38 *Hall v. Ochs,* 817 F.2d 920, 925 (1st Cir.1987).

39 *Germany,* 868 F.2d at 16 (quoting *Hall,* 817 F.2d at 925).

With regard to the facts and law in this case, the defendants lose their qualified immunity if a reasonable person in their respective positions would have understood that their conduct violated federal law. It is, therefore, necessary for me to look at the defendants' conduct and the state of federal law in June 1990.

As I explained earlier, the jury has found that one or more of the defendants beat Morris Pina for the purpose of causing him bodily harm. In June 1990, a reasonable police officer or detention attendant would have known that such a beating violated clearly established federal law.[40] The jury also found one or more of the defendants intentionally and/or with deliberate indifference failed to get Morris Pina medical care for an obvious, serious medical need. It was in 1990 clearly established that this too violated federal law.[41]

40 *See, e.g., Graham v. Connor,* 490 U.S. 386, 394–95, 109 S.Ct. 1865, 1870–71, 104 L.Ed.2d 443 (1989).

41 *See, e.g., Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976).

The jury found that as a result of being beaten and denied medical care, Morris Pina died. The jury implicitly found that each defendant either personally participated in the foregoing misconduct or knew that a colleague did so, and that each defendant intentionally filed a false report and/or made false statements to investigators in an attempt to keep Morris Pina's estate from learning the truth of what happened to him in order to prevent it from bringing this case.

In 1980, the Court of Appeals for the First Circuit decided *Landrigan v. City of Warwick* in which it cited the Court of

 © 2021 Thomson Reuters. No claim to original U.S. Government Works. 

Appeals for the Seventh Circuit's decision in *Hampton v. Hanrahan*[42] in assuming, without deciding, that an intentional effort to cover-up and deprive a potential plaintiff of his right to seek redress for an unconstitutional use of force would constitute an actionable violation of federal law if it succeeded in preventing the plaintiff from prevailing in a state tort action.[43] In 1984, the Court of Appeals for the First Circuit in *Williams v. City of Boston,* in dicta, cited *Bell* for the proposition that an official cover-up may violate § 1983 if it deprives the plaintiff of his right of access to the courts.[44] The court could then also ***930** have cited *Barrett v. United States,* which was decided by the Court of Appeals for the Second Circuit in 1982, for the proposition that an intentional cover-up which deprives a plaintiff of some but not all of the damages she would otherwise recover is remediable under 1983.[45]

42 *Hampton v. Hanrahan,* 600 F.2d 600, 621–23 (7th Cir.1979) *rev'd in part on other grounds,* 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980).

43 *Landrigan,* 628 F.2d at 742.

44 *Williams v. City of Boston,* 784 F.2d 430, 435 (1st Cir.1986).

45 *Barrett,* 689 F.2d at 331–32.

In 1989, the Court of Appeals for the First Circuit decided *Germany v. Vance.*[46] In that case, the court found that, if proven, the intentional withholding of exculpatory information from a juvenile in a detention proceeding would violate that juvenile's right to adequate, effective and meaningful access to the courts.[47] In addition, the court held that it was then clearly established that such conduct would violate federal law, and, therefore, the defendants were not entitled to qualified immunity.[48] In doing so, the court said: "In at least two cases appellate courts have found that a state official who intentionally withholds evidence that would enable an individual to *prove* a claim in court violates the individual's constitutional right of access."[49] The two cases cited were *Bell* and *Ryland.*[50] The court could have also then cited the 1988 decision of the Court of Appeals for the Ninth Circuit in *Karim–Panahi.*[51]

46 *Germany v. Vance,* 868 F.2d 9 (1st Cir.1989).

47 *Id.* at 14–16.

48 *Id.* at 16.

49 *Id.* at 15 (emphasis added).

50 *Id.* (citing *Bell,* 746 F.2d at 1260–63 and *Ryland,* 708 F.2d at 971–75).

 © 2021 Thomson Reuters. No claim to original U.S. Government Works. 

51 *Karim–Panahi,* 839 F.2d at 625.

In *Landrigan, Williams,* and *Germany,* the Court of Appeals for the First Circuit consistently and repeatedly indicated its agreement with the Seventh Circuit with regard to the law in this area, particularly the analysis in *Bell.* Indeed, it appears that as of June 1990, no circuit had indicated its disagreement with the analysis in *Bell.*

In any event, in these circumstances, I find that a reasonable police officer or detention attendant would know that beating Morris Pina and then refusing him medical care violated clearly established federal law, and that if presented with the question, the Court of Appeals for the First Circuit would find that an intentional effort to cover-up such violations in order to keep a civil suit from being filed and, if it were filed anyway, from succeeding, also violated federal law.

The cases the defendants have relied on with regard to their argument for qualified immunity are largely distinguishable. Some were decided before the *Bell* decision.[52] Some, like *Joyce v. Mavromatis* and *Vasquez v. Hernandez,* involve no proven deprivation of property or, indeed, in *Vasquez,* no alleged deprivation of property.[53] Some of the cases on which the defendants rely, such as *Wilson* and *Foster,* involve only abuses in discovery after a case was filed, in contrast to this case where the evidence and instructions related to cover-ups that began prior to the filing of the case and continued afterwards.[54] However, to the extent that cases like *Wilson* and *Foster* suggest in the context of the facts in ***931** this case that only the right to file suit was clearly established in 1990, but that the right to be free from a cover-up which began pre-filing and continued post-filing was not, I respectfully disagree with their analysis.

52 *See, e.g., Doe v. Schneider,* 443 F.Supp. 780, 787 (D.Kan.1978) and *Singer v. Wadman,* 595 F.Supp. 188, 302 (D.Utah 1982). In *Doe* and *Singer,* both courts rejected the plaintiffs' argument that the right of access to the courts included a " 'right to know' the facts supporting a possible future cause of action." *Singer,* 595 F.Supp. at 302. The holdings in *Doe* and *Singer* cannot be reconciled with a long line of subsequent decisions by numerous courts of appeals, beginning with *Ryland,* 708 F.2d at 971–73 and *Bell,* 746 F.2d at 1262.

53 *See Joyce v. Mavromatis,* 783 F.2d 56 (6th Cir.1986) (no deprivation of right of access under cover-up theory where plaintiff has not yet attempted to prosecute his underlying state law claims); *Vasquez,* 60 F.3d at 329 (cover-up theory not viable where there were "no allegations claiming that [the plaintiffs] have been prevented from pursuing a tort action in state court or that the value of such an action has been reduced by the cover-up.")

54 *See Wilson,* 52 F.3d at 1557 (recognizing a distinction "between interference with discovery and interference with the filing of the complaint" and holding that defendants are entitled to qualified immunity because they allegedly engaged only in the former type of interference); *Foster,* 28 F.3d at 430 (holding that the "right of access, as clearly established in 1985–88, encompassed a right to file an action, but not the right to proceed free of discovery abuses after filing.")

Accordingly, for the foregoing reasons, the defendants' motions for judgment as a matter of law, for a new trial, and for qualified immunity are hereby DENIED.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

 © 2021 Thomson Reuters. No claim to original U.S. Government Works. 

Delores Gonsalves, Plaintiff,

v.

Leonard Baillargeon, Richard Benoit, Frederick Borges, Robert Devlin, Sandra Grace, John Hoffman, Patrick Lawrence, Stephen Olivera, Michael Pachecho, Defendants.

C.A. No. 91–11993–MLW.

EXHIBIT A

VERDICT

QUESTION

1(a)(i) Did any defendant use unreasonable force against Morris Pina at Mapleview Terrace?

| Yes | X | No | |
|---|---|---|---|

1(a)(ii) Did any defendant use unreasonable force against Morris Pina at the New Bedford Police Department Headquarters?

| Yes | X | No | |
|---|---|---|---|

**If you answered Question 1(a)(i) or 1(a)(ii) "Yes," answer the corresponding part of Question 1(b). If you answered**

 © 2021 Thomson Reuters. No claim to original U.S. Government Works. 

**both Questions 1(a)(i) and 1(a)(ii) "No," go to Question 2.**

1(b)(i) Was the unreasonable force at Mapleview Terrace used with intent to cause Morris Pina bodily harm?

| Yes | X | No | |
|---|---|---|---|

1(b)(ii) Was the unreasonable force at the New Bedford Police Department Headquarters used with intent to cause Morris Pina bodily harm?

| Yes | X | No | |
|---|---|---|---|

**If you answered Question 1(b)(i) or 1(b)(ii) "Yes," answer the corresponding part of Questions 1(c) and (d). If you answered both Questions 1(b)(i) and 1(b)(ii) "No," go to Question 2.**

1(c)(i) Did the use of unreasonable force at Mapleview Terrace proximately cause any harm to Morris Pina?

| Yes | X | No | |
|---|---|---|---|

1(c)(ii) Did the use of unreasonable force at the New Bedford Police Department Headquarters proximately cause any harm to Morris Pina?

| Yes | X | No | |
|---|---|---|---|

WESTLAW © 2021 Thomson Reuters. No claim to original U.S. Government Works. 

1(d)(i) Was the use of unreasonable force at Mapleview Terrace a proximate cause of Morris Pina's death?

| Yes | | No | X |
|---|---|---|---|

1(d)(ii) Was the use of unreasonable force at the New Bedford Police Department Headquarters a proximate cause of Morris Pina's death?

| Yes | X | No | |
|---|---|---|---|

**If you answered either Question 1(c)(i) or 1(d)(i) "Yes," answer Question 1(e)(i). If you answered either Question 1(c)(ii) or 1(d)(ii) "Yes," answer Question 1(e)(ii). If you answered "No" to Questions 1(c)(i), 1(c)(ii), 1(d)(i), and 1(d)(ii), go to Question 2.**

1(e)(i) Which of the defendants has been proven to be responsible for the violation of the right to be free of the use of unreasonable force at Mapleview Terrace that you have found?

| | | | | |
|---|---|---|---|---|
| Leonard Baillargeon | Yes | X | No | |
| Frederick Borges | Yes | | No | X |
| Sandra Grace | Yes | | No | X |

 © 2021 Thomson Reuters. No claim to original U.S. Government Works. 

1(e)(ii) Which of the defendants has been proven to be responsible for the violation of the right to be free of the use of unreasonable force at the New Bedford Police Department that you have found?

| | | | | |
|---|---|---|---|---|
| Leonard Baillargeon | Yes | | No | X |
| Frederick Borges | Yes | | No | X |
| Robert Devlin | Yes | | No | X |
| Sandra Grace | Yes | | No | X |
| Stephen Olivera | Yes | | No | X |
| Michael Pachecho | Yes | | No | X |

**If you have addressed Question 1(e)(i) and answered "No" for every defendant listed there, answer Question 1(f)(i). If you addressed Question 1(e)(ii) and answered "No" for every defendant listed there, answer Question 1(f)(ii). Otherwise, go to Question 2.**

1(f)(i) Do you find that you cannot determine who violated Morris Pina's right to be free from the use of unreasonable force at Mapleview Terrace because of an intentional cover-up?

| | | | |
|---|---|---|---|
| Yes | | No | |

1(f)(ii) Do you find that you cannot determine who violated Morris Pina's right to be free from the use of unreasonable force at the New Bedford Police Department Headquarters because of an intentional cover-up?

| | | | |
|---|---|---|---|
| Yes | X | No | |

 © 2021 Thomson Reuters. No claim to original U.S. Government Works. 

**If you answered "Yes" to Question 1(f)(i), answer question 1(g)(i). If you answered "Yes" to Question question 1(g)(ii). If you answered Questions 1(f)(i) and 1(f)(ii) "No," go to Question 2.**

1(g)(i) Who do you find participated in the intentional cover-up concerning the unreasonable use of force at Mapleview Terrace?

| | |
|---|---|
| Leonard Baillargeon | ..................................................... |
| Richard Benoit | ..................................................... |
| Frederick Borges | ..................................................... |
| Robert Devlin | ..................................................... |
| Sandra Grace | ..................................................... |
| John Hoffman | ..................................................... |
| Patrick Lawrence | ..................................................... |
| Stephen Olivera | ..................................................... |
| Michael Pachecho | ..................................................... |

1(g)(ii) Who do you find participated in the intentional cover-up concerning the unreasonable use of force at the New Bedford Police Headquarters?

 © 2021 Thomson Reuters. No claim to original U.S. Government Works. 

| | |
|---|---|
| Leonard Baillargeon | X |
| Richard Benoit | X |
| Frederick Borges | X |
| Robert Devlin | X |
| Sandra Grace | X |
| John Hoffman | X |
| Patrick Lawrence | X |
| Stephen Olivera | X |
| Michael Pachecho | X |

QUESTION 2

2(a) Did Morris Pina have a serious medical need while in police custody?

| Yes | X | No | |
|---|---|---|---|

 © 2021 Thomson Reuters. No claim to original U.S. Government Works. 

**If you answered Question 2(a) "Yes," answer Questions 2(b) and (c). If you answered it "No, see the instructions for Question 3.**

2(b) Did any defendant intentionally fail to attend to Morris Pina's serious medical need?

Yes X No

2(c) Did any defendant with deliberate indifference fail to attend to Morris Pina's serious medical need?

Yes X No

**If you answered either or both of Questions 2(b) and (c) "Yes," answer Questions 2(d), 2(e) and 2(f). If you answered them both "No," see the instructions for Question 3.**

2(d) Did any defendant utilize threats, intimidation or coercion in failing to attend to Morris Pina's serious medical need?

Yes No X

2(e) Was the failure to attend to Morris Pina's serious medical need a proximate cause of any harm to Morris Pina?

Yes X No

 © 2021 Thomson Reuters. No claim to original U.S. Government Works. 

2(f) Was the failure to attend to Morris Pina's serious medical need a proximate cause of his death?

| Yes | X | No | |
|---|---|---|---|

**If you answered either or both of Questions 2(e) and 2(f) "Yes," answer Question 2(g). If you answered them both "No," see the instructions for Question 3.**

2(g) Which of the defendants has been proven to be responsible for the failure to attend to the serious medical need of Morris Pina you have found proven?

| | | | | |
|---|---|---|---|---|
| Leonard Baillargeon | Yes | | No | X |
| Frederick Borges | Yes | | No | X |
| Robert Devlin | Yes | | No | X |
| Sandra Grace | Yes | | No | X |
| John Hoffman | Yes | | No | X |
| Patrick Lawrence | Yes | | No | X |
| Stephen Olivera | Yes | | No | X |
| Michael Pachecho | Yes | | No | X |

**If you answered Question 2(g) "No" for every defendant, answer Question 2(h). If not, see the instructions for Question 3.**

2(h) Do you find that you cannot determine who violated Morris Pina's right to receive care for a serious medical need because of an intentional cover-up?

| Yes | X | No | |
|---|---|---|---|

**If you answered Question 2(h) "Yes," answer Question 2(i). If not, see the instructions for Question 3.**

2(i) Who do you find participated in the intentional cover-up?

| | |
|---|---|
| Leonard Baillargeon | X |
| Richard Benoit | X |
| Frederick Borges | X |
| Robert Devlin | X |
| Sandra Grace | X |
| John Hoffman | X |
| Patrick Lawrence | X |
| Stephen Olivera | X |
| Michael Pachecho | X |

 © 2021 Thomson Reuters. No claim to original U.S. Government Works. 

QUESTION 3

**Answer Question 3(a)(i) if you answered "Yes" concerning at least one defendant in deciding Question 1(e)(i) or 1(g)(i).**

3(a)(i) What amount of money is necessary to compensate the estate of Morris Pina for any harm he suffered prior to his death as a result of the violation at Mapleview Terrace or his right to be free from the use of unreasonable force that you have found proven?

$5,000

**Answer Question 3(a)(ii) if you answered "Yes" concerning at least one defendant in deciding Question 1(e)(ii) or 1(g)(ii), or 2(g) or 2(i).**

3(a)(ii) What amount of money is necessary to compensate the estate of Morris Pina for any harm he suffered prior to his death as a result of the violation of his rights at the New Bedford Police Department Headquarters that you have found proven?

$ 25,000

 © 2021 Thomson Reuters. No claim to original U.S. Government Works. 

Answer Question 3(b) if you have answered “Yes” to either Question 1(d)(i), 1(d)(ii) or 2(f), and also answered “Yes” with regard to at least one defendant in deciding any of Questions 1(e)(i), 1(e)(ii), 1(g)(i), 1(g)(ii), 2(g) or 2(i).

3(b) What amount of money is necessary to compensate the estate of Morris Pina for the value of Morris Pina’s life to Morris Pina?

$ 400,000

Answer Question 3(c) if: (1) you answered Question 1(d)(i) “Yes” and also answered “Yes” concerning at least one defendant in deciding Question 1(e)(i) or 1(g)(i); or (2) you answered Question 1(d)(ii) “Yes” and also answered “Yes” concerning at least one defendant in deciding Question 1(e)(ii) or 1(g)(ii); or (3) you answered Question 2(f) “Yes” and answered “Yes” concerning at least one defendant in deciding Question 2(g) or 2(i).

3(c) What amount of money, if any, is necessary to compensate Morris Pina’s mother for his burial expenses, and her loss of his services and companionship?

$ 5,000

**Answer Question 3(d) if you awarded any amount of money as damages in answering Question 3(a)(i), 3(a)(ii), 3(b) or 3(c). If you have not, your deliberations are complete.**

3(d) Do you award prejudgment interest on any damages you have awarded?

 © 2021 Thomson Reuters. No claim to original U.S. Government Works. 

| Yes | | No | X |
|---|---|---|---|

March 8, 1996

| Date | Foreperson |
|---|---|

**All Citations**

939 F.Supp. 921

**End of Document**

© 2021 Thomson Reuters. No claim to original U.S. Government Works.