UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JALYMAR NATAL-LUGO, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) )  Civil Action No. 20-11979-GAO |
| CITY OF FALL RIVER, et al., | ) ) ) |
| Defendants. | ) ) ) |

ORDER ON BRISTOL COUNTY DISTRICT ATTORNEY'S
MOTION TO QUASH DEPOSITION SUBPOENA
[Docket No. 165]

November 1, 2024

Boal, M.J.

On June 28, 2024, Plaintiffs served a subpoena for deposition testimony on Bristol County District Attorney Thomas M. Quinn, III. See Docket No. 166 at 2. Quinn has moved to quash the subpoena. Docket No. 165.[1] This Court heard oral argument on October 23, 2024. For the following reasons, this Court grants the motion.

I.   RELEVANT BACKGROUND

On or about November 3, 2020, the Plaintiffs filed this action against the City of Fall River and several of its officials and police officers. Docket No. 1. The Plaintiffs allege, inter alia, violations of their constitutional and civil rights in connection with the shooting death of Larry Ruiz-Barreto by a Fall River police officer on November 12, 2017, and a subsequent

---

[1] On September 17, 2024, Judge O'Toole referred this case to the undersigned for full pretrial management. Docket No. 179.

1

altercation between Ruiz-Barreto's family and friends and the police. See generally Docket No. 78.

Pursuant to M.G.L. c. 38, § 4,[2] the District Attorney investigated the facts and circumstances surrounding Ruiz-Barreto's death. See Docket No. 168-11. On March 16, 2018, Quinn issued his findings and conclusions. See id. Quinn found that "based on all the available information, eyewitness accounts and circumstances, we conclude that the death of Mr. Ruiz-Barreto on November 12, 2017 was a justified homicide." Id. at 21. The Plaintiffs allege that the District Attorney's investigation and report is part of a conspiracy to cover up the murder of Ruiz-Barreto by Fall River Police Officer Nicholas Hoar. See Docket No. 168 at 10; see also Second Amended Complaint ("SAC") at ¶¶ 48-49. Among other things, Plaintiffs allege that "evidence was recently disclosed in discovery -- evidence previously available only to the District Attorney and police from 2017-2022, which contradicts [the District Attorney's findings] and reveals a deliberate omission of critical facts, which if included [in] the report, required a finding that this homicide was not justified." Docket No. 168 at 3.

In addition, an article published on December 1, 2017, stated that then Fall River Chief of Police Albert Dupere believed that the November 12 shooting would be found justified. Docket No. 168-9. Dupere testified that this statement was based "entirely" on a conversation he had with Quinn sometime between November 12 and November 30, 2017. See Docket No. 181-1 at 20-21. According to Dupere, Quinn told him, with respect to the investigation, "that he should have an answer for us pretty soon and that everything looked okay." Id. at 21.

---

[2] Massachusetts General Laws, chapter 38, section 4, provides that in the event of a death "due to violence or other unnatural means or to natural causes that require further investigation," "the district attorney or his law enforcement representative shall direct and control the investigation of the death and shall coordinate the investigation with the office of the chief medical examiner and the police department within whose jurisdiction the death occurred."

Plaintiffs also allege that two hours after the police shooting, a "small army" of police officers descended upon and assaulted Ruiz Barreto's father, Demix Ruiz Hernandez, and his family at Charlton Hospital, as they were mourning their loss, and they were arrested and charged with numerous false criminal charges. Docket No. 168 at 7; SAC at ¶¶ 55-68. According to Plaintiffs, during the criminal proceedings that followed, the District Attorney's office denied Ruiz Hernandez access to all records connected to the police shooting, which had been ordered by the criminal court to be produced. See id. Plaintiffs argue that the dismissal of Ruiz Hernandez's criminal case on July 26, 2019, rather than to produce the court-ordered discovery, suggests a deliberate effort by the District Attorney to suppress evidence that could be damaging to the City and the involved officers. Docket No. 168 at 7-8.[3]

On or around February 2022, the Plaintiffs served a subpoena for documents upon Quinn. Docket No. 166 at 2; Docket No. 166-1. The District Attorney's Office responded to the subpoena on April 19, 2022, producing numerous documents and materials. See Docket No. 166-2. On June 28, 2024, the Plaintiffs served the deposition subpoena at issue here, seeking testimony from Quinn. Docket No. 166 at 2.

Quinn filed the instant motion to quash on July 11, 2024. Docket No. 165. On July 24, 2024, Plaintiffs filed their opposition. Docket No. 168. Quinn filed a reply on September 17, 2024. Docket No. 181.

II.     STANDARD OF REVIEW

"Discovery procedures set forth in the Federal Rules of Civil Procedure seek to further the interests of justice by minimizing surprise at trial and ensuring wide-ranging discovery of

---

[3] At the October 23, 2024 hearing, counsel for the Plaintiffs indicated that they were not relying on this argument in opposing Quinn's motion to quash the subpoena.

information." Cartel Asset Mgmt. v. Ocwen Fin. Corp., No. 01-cv-01644-REB-CBS, 2010 WL 502721, at *9 (D. Colo. Feb. 8, 2010) (citing United States ex rel. Schwartz v. TRW, Inc., 211 F.R.D. 388, 392 (C.D. Cal. 2002)). To that end, Rule 26(b) permits "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). A Rule 45 subpoena is subject to Rule 26(b)'s restrictions. Miller v. Allstate Fire & Cas. Ins. Co., No. 07-260, 2009 WL 700142, at *2 (W.D. Pa. Mar. 17, 2009) (citation omitted). Thus, the information sought by a Rule 45 subpoena must be: (1) not privileged; (2) relevant to the claim or defense of any party; and (3) proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). "A subpoena issued to a non-party pursuant to Rule 45 is subject to Rule 26(b)'s overriding relevance requirement." EEOC v. Texas Roadhouse, Inc., 303 F.R.D. 1, 2 (D. Mass. 2014). The burden of establishing the relevance of the requested information is on the subpoenaing party. Viscito v. Nat'l Plan. Corp., No. CV 3:18-30132-MGM, 2020 WL 4274721 at *2 (D. Mass. July 24, 2020).

The party claiming the protection of a privilege bears the burden of demonstrating, by a fair preponderance of the evidence, not only that the privilege applies, but also that it has not been waived. In re Keeper of the Records (Grand Jury Subpoena Addressed to XYZ Corp.), 348 F.3d 16, 22 (1st Cir. 2003).

III.   ANALYSIS

Among other things, Quinn argues that the testimony the Plaintiffs are expected to seek will likely implicate several privileges, including the deliberative process privilege. Docket No. 166 at 5-16. "The deliberative process privilege protects the internal deliberations of an agency in order to prevent 'injury to the quality of agency decisions.'" Town of Norfolk v. U.S. Army Corps of Eng'rs., 968 F.2d 1438, 1458 (1st Cir. 1992) (quoting NLRB v. Sears, Roebuck & Co.,

421 U.S. 132, 151 (1975)); accord, e.g., Am. Fed. Gov't Employees, AFL-CIO v. U.S. Dep't of Health & Human Servs., 63 F.Supp.2d 104, 109 (D. Mass. 1999) ("The 'fishbowl' process against which the deliberative process guards threatens the quality and integrity of all agency decisionmaking."). In order for the privilege to apply, the information must meet two requirements: it must be pre-decisional, that is, antecedent to the adoption of agency policy; and it must be deliberative, that is, actually related to the process by which policies are formulated. Texaco Puerto Rico, Inc., v. Department of Consumer Affairs, 60 F.3d 867, 884 (1st Cir. 1995).

Because the subpoena seeks deposition testimony, rather than documents, it is difficult to make determinations regarding the application of any of the asserted privileges without information about the Plaintiffs' intended areas of inquiry during Quinn's deposition. When pressed at oral argument, Plaintiffs' counsel indicated that he intended to seek testimony regarding Quinn's "omissions" in the investigation report, "the steps he took in his investigation," "critical things in his report," "his reasoning process," "everything related to his report," and his conversation with Chief Dupere and with others in the Fall River Police Department about the investigation. All of these areas of inquiry are exactly the types of information that are protected by the deliberative process privilege. Discovery of the basis for a prosecution or non-prosecution is typically protected by the deliberative process privilege. Gomez v. City of Nashua, 126 F.R.D. 432, 435 (D.N.H. 1989). As the Gomez court stated, "[t]he decision whether to prosecute is the product of a deliberative process which should be afforded a high degree of protection from public inquiry." Id. (citation omitted); see Shea v. Porter, No. 1:08-12148-FDS, 2013 WL 12318557, at *6 (D. Mass. Apr. 9, 2013) (testimony regarding the decision making behind a nolle prosequi was protected by the deliberate process privilege). Indeed, at oral argument, Plaintiffs' counsel acknowledged that their interest was "in

5

the decision-making process itself." Accordingly, I find that the deposition of DA Quinn is likely to infringe upon the deliberative process privilege.

The deliberative process privilege is qualified and courts are obliged to balance conflicting interests on a case-by-case basis. Gomez, 126 F.R.D. at 434 (D.N.H. 1989). Interests in favor of disclosure are strongest when the information in question is "highly relevant, helpful, and unavailable from other sources." Stamps v. Town of Framingham, 38 F.Supp.3d 134, 140 (D. Mass. 2014) (citing Ass'n for Reduction of Violence v. Hall, 734 F.2d 63, 66 (1st Cir. 1984)). On the other hand, interests in favor of non-disclosure are strongest when the information in question "falls squarely within the definition of privilege, and its disclosure would undermine the public interest in free, candid and uninhibited exchange of information." Id. The Plaintiffs, however, have not sufficiently tied Quinn's expected testimony to any of their claims. They argue that Quinn's testimony is relevant to their claims of a conspiracy and "cover up" but there are no allegations that Quinn himself was involved in any such conspiracy.

Finally, the deliberative process privilege may be waived. See Shell Oil Co. v. Internal Revenue Service, 772 F.Supp. 202, 211 (D. Del. 1991) (IRS waived any deliberative process privilege with respect to draft definition of "tar sands" when IRS employee read definition aloud at a public meeting). Voluntary disclosure of privileged material may result in a waiver. See United States v. Mass. Inst. of Tech., 129 F.3d 681, 684-6 (1st Cir. 1997).

The Plaintiffs argue that Quinn waived any privilege by the following disclosures: (1) his conversation with Chief Dupere in November 2017, where he told Dupere that "everything looked okay;" (2) Chief Dupere's announcement on December 1, 2017, publicly disseminating the District Attorney's position that the shooting was justified; (3) the District Attorney's public announcement and March 16, 2028 report disclosing his conclusion about the shooting; and (4)

the District Attorney's office production of documents in response to the February 2022 document subpoena. Docket No. 168 at 11-12.[4]

None of these disclosures, however, reveal deliberative process information. See In re Pharmaceutical Indus. Average Wholesale Price Litig., 254 F.R.D. 35, 40 (D. Mass. 2008) ("The deliberative process privilege does not shield documents that simply state or explain a decision that the government has already made" or "protect material that is purely factual."). These disclosures, therefore, do not waive the deliberative process privilege.

Accordingly, this Court finds that a deposition of Quinn would likely seek information protected by the deliberative process privilege and that the deposition subpoena should be quashed on that basis.[5]

IV.   ORDER

For the foregoing reasons, this Court grants Quinn's motion to quash.

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge

---

[4] Plaintiffs also argue that the DA's failure to provide a privilege log waives any claim of privilege. The subpoena, however, seeks only deposition testimony so it would be impossible for Quinn to provide a privilege log.

[5] Given this finding, it is unnecessary to address Quinn's remaining arguments.