UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JALYMAR NATAL-LUGO, et al., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> CITY OF FALL RIVER, et al., ) <br> ) <br> Defendants. ) <br> ) | Civil Action No. 20-11979-GAO |

ORDER ON PLAINTIFFS' MOTION TO COMPEL
PRODUCTION OF DOCUMENTS AND FOR SANCTIONS
[Docket No. 239]

October 30, 2025

Boal, M.J.

     Plaintiffs have filed a motion compelling defendant City of Fall River to produce all documents responsive to Plaintiffs' April 15, 2025, Request for Production of Documents; deeming all of the City's objections to those requests admitted; and imposing sanctions for spoliation of evidence. Docket No. 239.[1] For the following reasons, this Court grants the motion to the extent that it orders the City to file certain certifications as discussed below. It also orders the City to search for and produce any responsive materials from the Fall River Police Department's social media accounts. The motion is otherwise denied.

---

[1] On November 17, 2024, Judge O'Toole referred this case to the undersigned for full pretrial management. Docket No. 179; see also Docket No. 187.

I.       RELEVANT BACKGROUND

On November 3, 2020, the Plaintiffs filed this action against the City of Fall River and several of its officials and police officers.  Docket No. 1.[2]  The Plaintiffs allege, inter alia, violations of their constitutional and civil rights in connection with the shooting death of Larry Ruiz-Barreto by a Fall River police officer on November 12, 2017, and a subsequent altercation between Ruiz-Barreto's family and friends and the police.  See generally Docket No. 78.  In July, 2019, the Plaintiffs sent a Notice of Presentment, pursuant to the Massachusetts Tort Claims Act.  See Docket No. 243-2.[3, 4]

This case proceeded originally on a phased discovery schedule: phase one would be the shooting incident; phase two would be the hospital arrests; and phase three would be Monell and supervisory discovery.  See Docket No. 102.  In October and December 2023, the City produced documents in response to sixty-three requests for production from plaintiff Jaylimar Natal-Lugo.  Docket No. 243 at 7-8.  In April 2025, the City produced documents responsive to thirty-four document requests from plaintiff Dimex Ruiz.  Id. at 8.

On January 22, 2025, this Court issued an amended scheduling order directing that all fact discovery, regardless of phase, be completed by May 30, 2025.  Docket No. 209 at 1.  On

---

[2] Citations to "Docket No. ___" are to documents appearing on the Court's electronic docket.  They reference the docket number assigned by CM/ECF, and include pincites to the page numbers appearing in the top right corner of each page within the header appended by CM/ECF.

[3] Although the letter is dated April 29, 2019, the City represents that it was not actually served until July 2019.  See Docket No. 243 at 6.

[4] The Plaintiffs also reference a "Notice of Spoliation of Digital Evidence dated February 16, 2018."  Docket No. 240 at 4.  That reference is unclear.  At oral argument, Plaintiffs' counsel clarified that they were referring to a motion to compel filed in the criminal case against Dimex Ruiz-Hernandez.  This Court notes, however, that the District Attorney's Office is an entity separate from the City and notice to the District Attorney's Office does not constitute notice to the City.

April 1, 2025, the Plaintiffs served requests for production regarding Monell liability and supplemental requests on April 15, 2025, totaling an additional 178 requests for production. Docket No. 240 at 5. On May 30, 2025, this Court granted the parties' motion to extend the scheduling order deadlines and directed that fact discovery be completed by July 14, 2025. Docket No. 217.

On July 6, 2025, the Plaintiffs filed a motion to compel the City to respond, and produce documents responsive to, the Plaintiffs' April 1 and April 15, 2025, requests for production. Docket No. 220. On July 28, 2025, the City filed a response. Docket No. 226. In that response, the City did not argue that the requests were objectionable in any way. Rather, it indicated that it was working on preparing a response and searching for documents, and proposed providing the Court with an update on its progress on or before the August 20, 2025, hearing and status conference. See Docket No. 226 at 2; see also Docket No. 223 at 2 (indicating that City officials were working on compiling responsive materials). On August 20, 2025, this Court granted the Plaintiffs' motion to compel and ordered the City to respond to Plaintiffs' requests for production of documents and produce responsive documents by August 29, 2025. Docket No. 235.

On August 29, 2025, the City served its responses to Plaintiffs' requests for production. Docket No. 240 at 5. Plaintiffs filed the instant motion on September 29, 2025. Docket No. 239. On October 14, 2025, the City filed an opposition. Docket No. 243. On October 30, 2025, Plaintiffs filed a reply. Docket No. 247. This Court heard oral argument on October 28, 2025.

II.     ANALYSIS

    A.    Waiver Of Objections

The City did not respond timely to the Plaintiffs' third set of request for productions nor did it request additional time to do so. Rather, the Plaintiffs had to file a motion to compel. See

Docket No. 220. When the City responded to that motion, it again failed to raise any objections to the requests. Rather, it simply indicated that it needed additional time to search for and produce documents. This Court therefore granted the motion to compel. See Docket Nos. 226, 235. It is true that a party's failure to timely object to discovery requests may be deemed a waiver of any objections to those requests. See Fed. R. Civ. P. 33(b)(4), 34(b); Hamelin v. Kinder Morgan, Inc., No. 3:21-cv-30054-MGM, 2022 WL 17752133, at *3 (D. Mass. Dec. 19, 2022) (citations omitted). "However, judicial discretion is still at play in cases of waiver, and a court can decline to deem late objections waived when '[the discovery] request far exceeds the bounds of fair discovery.'" Id. (alteration in original; citation omitted).

Here, the Plaintiffs served 178 additional requests for production, many of which seem to be duplicative of requests made in earlier phases of discovery. In addition, many of the requests are argumentative. For example, many of the requests assume that discovery was withheld in a criminal case against one of the Plaintiffs. See, e.g., Docket No. 240-1 at 1-6, 16 (RFP Nos. 1-5, 18). They also conflate the City and the District Attorney's Office, which as discussed below, are two separate entities. See id. Others assume the City in fact failed to supervise defendant Nicolas Hoar. See, e.g., id. at 23 (RFP No. 37).

On the other hand, the City's objections use outdated language ("without waiving these or any other objections") and often it is unclear whether or not the City has withheld any documents on the basis of such objections. Nevertheless, I decline to find the objections waived, given that Plaintiffs do not tie this argument to any particular requests or to any particular relief they seek.

      B.      The Plaintiffs Have Not Shown That The
             City's Responses Are Evasive Or Incomplete

Plaintiffs also argue that the City's responses are evasive and incomplete. Docket No.

240 at 8-9. First, with respect to RFP Nos. 2, 3, 5, 40, 41, 150-170, the Plaintiffs complain that the City's answer that hard drives were "cleared" is a "non-answer." The City's response indicates that no such documents have been found. This Court will address these requests below in connection with the Plaintiff's arguments regarding spoliation.

The Plaintiffs also argue that the City's blanket objections based on vagueness are improper. Docket No. 240 at 9. In so doing, it only specifically addresses RFP Nos. 1, 4, and 91. Those requests, however, do contain vague and confusing wording.

In addition, Plaintiffs argue that the City has improperly attempted to shift the burden of production for documents in its control to third-party agencies. Id. Plaintiffs, however, do not identify to which agencies they are referring, let alone show that documents within those agencies are in the City's control. See FM Generator, Inc. v. MTU Onsite Energy Corp., No. 14-14354-DJC, 2016 WL 8902603, at *3 (D. Mass. Aug. 25, 2016) (party seeking production of documents bears the burden of making a prima facie showing of control). It appears, for example, that Plaintiffs seek documents that they claim were withheld in discovery in the criminal case against Dimex Ruiz Hernandez. See, e.g., Docket No. 240-1 at 2 (RFP No. 1). Documents in the possession of the Bristol County District Attorney's Office, however, are not in the City's control. See Miller v. City of Boston, 297 F.Supp.2d 361, 368-369 (D. Mass. 2003) (finding that the Office of the District Attorney is a state agency). Accordingly, the Plaintiffs have not shown that the City's responses are evasive or incomplete.

C.    Spoliation Of Evidence

Finally, Plaintiffs argue that the City destroyed evidence and sanctions are therefore warranted. Docket No. 240 at 10-16. "[A] litigant is under . . . a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the

discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request." Ortiz v. City of Worcester, No. 4:15-cv-40037-TSH, 2017 WL 2294285, at *2 (D. Mass. May 25, 2017) (citations omitted). The duty to preserve arises when "litigation is reasonably anticipated." Gordon v. DreamWorks Animation SKG, Inc., 935 F.Supp.2d 306, 314 (D. Mass. 2013).

A party asserting that spoliation has occurred "must show that there is evidence that has been spoiled (i.e., destroyed or not preserved)," and that "the opposing party had notice of a potential claim and of the relevance to that claim of the destroyed evidence." Gomez v. Stop & Shop Supermarket Co., 670 F.3d 395, 399 (1st Cir. 2012).

A litigant, however, does not have a duty to preserve evidence that is not in his custody or possession and over which he has no control. Ortiz, 2017 WL 2294285, at *2. In addition, the duty to preserve "is not meant to impose an unreasonable or disproportional burden in that a party need not preserve every paper, electronic document, backup tape or cloud-storage repository that conceivably might later be deemed to be relevant." Boudreau v. Petit, No. 17-301MSM, 2025 WL 553975, at *1 (D.R.I. Feb. 19, 2025) (citation omitted).

Determining whether the City breached this duty of preservation requires this Court to determine "1) the scope of [the City's] duty of preservation; 2) whether the evidence in question falls within this scope; and 3) whether the actions taken by [the City] violated this duty." Ortiz, 2017 WL 2294285, at *3 (citation omitted). Here, the Plaintiffs identify five categories of information allegedly destroyed by the City: (1) MDT/Computer and GPS data (Docket No. 240 at 13-14); (2) officer cell phone records, emails, and voicemails (id. at 14); (3) digital forensic copies of officer's computers and their social media (id.); (4) Officer Hoar's disciplinary and psychological records (id. at 14-15); and (5) internal investigation files (id. at 15).

6

*MDT/Computer and GPS Data*.  A number of requests seek documents regarding the Mobile Data Terminal ("MDT") and computer and GPS data from Officer Hoar's cruiser.  See Docket No. 240-1 at 3-4, 6, 70-72, 75-77 (RFP Nos. 2, 3, 5, 150, 151, 152, 153, 154, 155, 163, 164, 165, 167, 168).  According to the City, police cruisers did not have GPS units in 2017.  Docket No. 243 at 18.  The Plaintiffs question that representation based on a picture of Officer Hoar's cruiser that shows a device on the dash of the cruiser that looks like it may be a portable GPS unit.  Docket No. 240 at 13.  The City represents that one of its IT members explained that some officers used to bring their own portable GPS devices into cruisers to help them navigate the City.  Docket No. 243 at 18.  The City, however, did not own, possess, or control such devices.  Id.  It also does not know whether the device shown in the picture is indeed a portable GPS unit and, if so, whether it belonged to Officer Hoar and whether it was returned to him.  Id.

Plaintiffs, however, have not shown that GPS information is relevant and, therefore, cannot show that the City had a duty to preserve any such information.  At oral argument, Plaintiffs explained that they believe that the cruiser and the Ruiz-Barreto's vehicle may have been moved after the shooting.  They argue that Plaintiffs argue that this data "would have provided an objective, second-by-second 'digital footprint' of the entire 16-second incident.  It could have definitively established vehicle positioning, speed, and movement, and provided a time-stamped log of officer communications."  Docket No. 240 at 13.  There is no evidence, however, that portable GPS devices like the ones shown in the picture of the cruiser would in fact have that information.

MDTs are computers located in police cruisers used to retrieve information such as driver's license, registration records, and criminal records information.  Given the timeline of events, it appears unlikely that Officer Hoar conducted an MDT check before or after the

shooting. In any event, Plaintiffs have not sufficiently explained how such information would be relevant other than their desire to have it. As such, Plaintiffs have failed to show that the City should have preserved such information.

*Officer Cell Phone Records, Emails, and Voicemails*. Plaintiffs state that "[a] forensic download of the officers' cell phones (and their requested historical cell site data), along with their emails and voicemails, would have provided a complete record of their communications and movements before, during, and after the shooting." Docket No. 240 at 14. They also argue that such information "could also reveal attempts to coordinate a false narrative after the fact, a critical line of inquiry given the eyewitness statements." Id.

There has been no showing, however, that the officer's personal cell phone records, emails, or voicemails are within the control of the City. See, e.g., Volpe v. Ryder, No. 19-cv-02236, 2022 WL 4329475, at *4 (E.D.N.Y. 2022) (in order to require search and production of text messages on officer's personal cell phones, some evidence that they used the personal cell phone for work is required).

With respect to City emails, it appears that any such emails are no longer available. See Response to RFP No. 41 ("[T]he department used a Zimbra software platform until about 2019, then migrating to Outlook Web Access and, still later, to Office 365. Attempts were made to access the system that was multiple platforms ago in order to perform an electronic search and there was no ability to do so."). In order to properly evaluate this request, this Court needs more information. Accordingly, this Court orders the City to file affidavits from the appropriate City representative(s), outlining the facts regarding its email systems, the changes made to those systems, including the dates when any such changes were made, and the City's searches for responsive emails. The City will file such affidavits within two weeks.

*Digital Forensic Copies And Social Media*. Plaintiffs argue that "[f]orensic copies of the officers' computers and a preservation of their social media accounts could have provided additional context, communications, and evidence related to the incident and the officers' conduct." Docket No. 240 at 14. Again, there is no evidence that such information would be within the control of the City.

At oral argument, Plaintiffs' counsel indicated that they were seeking any responsive materials from any City social media accounts, even though the requests do not actually appear to request that information. The City's counsel indicated that the Fall River Police Department has a Facebook account and agreed to search for and produce responsive information, if any. It shall do so within two weeks.

*Officer Hoar's Disciplinary And Psychological Records*. The City represents that it has produced Officer Hoar's personnel, training, and internal affairs files and has nothing else to produce. With respect to psychological records, there is again no showing that such materials would be within the City's control. Accordingly, this request is denied.

*Internal Investigation Files*. Finally, the Plaintiffs allege that the City has failed to produce documents regarding the internal investigation of the shooting. Docket No. 240 at 15. The City, however, has represented that such material was indeed produced during discovery, as early as 2023, and there is nothing more to be produced. Docket No. 243 at 20. Plaintiffs have pointed to no evidence to question that representation.

III.    ORDER

For the foregoing reasons, this Court grants the motion only to the extent that it orders the City to file affidavit(s) regarding its email systems and the search for responsive emails as directed above. It also orders the City to search for and produce any responsive materials from

the Fall River Police Department's social media accounts.  Should Plaintiffs wish to further pursue this motion with respect to those materials, they must file an appropriate motion within two weeks after the filing of the affidavit(s).  The motion is otherwise denied.

/s/ Jennifer C. Boal<br>
JENNIFER C. BOAL<br>
United States Magistrate Judge